CASE 9—INDICTMENT—MARCH 22.

# Hines v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. DYING DECLARATIONS.—Where a dying declaration is made and reduced to writing and sworn to by the declarant, the writing should, if within the power of the party offering the declaration, be produced; but where the accused, for any reason, procures the rejection of the writing, he will not be heard to object to oral testimony detailing what the deceased then said, provided it be shown that the statement was made under the conditions necessary to render a statement admissible as a dying declaration.

2. SAME.—Where statements were made by the deceased at different times, all may be proved as his dying declarations if all were made under a sense of impending death.

F. HAGAN FOR APPELLANT.

1. Dying declarations are admitted only from the necessity of the case. If the "transactions from which death ensued" are clearly shown by other evidence, dying declarations should not be admitted. (Wharton, sec. 670.)

2. If the statement of the deceased was committed to writing and signed by him at the time, the writing should be produced, if in existence. (Rex v. Reason, 2 Russell, 762.)

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

The defendant having procured the rejection of the written declaration, is estopped to object to the oral proof upon the ground that there was a written statement.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Whether the accused was in fault as to the homicide for which he was tried was a question for the jury. They were the triers of this issue, and they have found against him, under instructions from the court not open to objection, and which were fully as favorable to him as he had a right to demand. The only ground urged

by his counsel for a reversal is, that testimony detail-
ing statements of the deceased as to the circumstances
attending the difficulty in which he was shot by the
accused, and which was offered as proving dying dec-
larations, was incompetent.    The record shows that the
Commonwealth first introduced a witness who, after
proving that the accused made the statement when he
was *in extremis*, and under a sense of impending death,
detailed it to the jury, the accused objecting because
his statement as to how the difficulty occurred, made
at another time and to another party, had been re-
duced to writing by a notary and sworn to by the de-
ceased.    The statement made to this first witness was
not reduced to writing.    It related to the immediate
circumstances attending the tragedy.    Subsequently
the State introduced the notary, but he was unable
to prove that the deceased made the statement which
he had reduced to writing, under a belief of impend-
ing death.    He testifies that the deceased said nothing
upon this subject in his presence.    The accused ob-
jected to the introduction of the writing, *and at his
instance it was excluded.*

Another party, who was with the deceased just be-
fore the notary came to take the statement, testified
that just before the coming of that officer the deceased
said there was no hope for him; that he was then dy-
ing, and would not live out the day.    This party re-
mained and heard the statement made by the deceased
to the notary as to the circumstances of the killing;
and the written statement having been excluded by
the court as incompetent, this by-stander was permit-
ted to prove what the deceased then said to the notary

relative to the killing. The evidence of this last witness was not excepted to by the accused; but if it had been, he could not, in our opinion, be heard to complain of its introduction.

It is clear that the two statements of the deceased, as proven by the witnesses, were made under the conditions upon the part of the declarant as to life or death which warrant the admission of such statements as dying declarations. There is no question as to their competency upon this score. Neither can there be as to the circumstances detailed, because they constituted the *res gestæ* of the homicide. The authorities are not altogether in harmony, whether, if a dying declaration, when made, be reduced to writing, parol evidence may be given as to the declaration, although the writing be within the power of production by the party offering the oral evidence. Wharton says, however: "If the declaration of the deceased, at the time of his making it, be reduced into writing, the written document must be given in evidence, and no parol testimony respecting its contents can be admitted; and if a declaration *in articulo mortis* be taken down in writing, and signed by the party making it, the judge will neither receive a copy of the paper in evidence, nor will he receive parol evidence of the declaration." (1 Wharton's Crim. Law, section 679.)

Russell says: "If the statement of the deceased was committed to writing, and *signed by him* at the time it was made, it has been held essential that the writing should be produced if existing, and that neither a copy nor parol evidence of the declaration could be admitted to supply the omission." (2 Russell on Crimes, page 762.)

It seems to us that where a dying declaration is made and reduced to writing, and sworn to by the declarant, as in this instance, it, under the rule that the best evidence the case admits of must be produced, should, if within the power of the party, be produced. But where the accused, for any reason, procures the rejection of the writing, as he did in this case, it does not lie in his mouth to object to oral testimony detailing what the deceased then said, provided it be shown that the statement was made under the conditions necessary to render a statement admissible as a dying declaration. The statement proven by the first witness and that by the last one were substantially the same. The accused was not, therefore, prejudiced by proving both; but, in any event, we think both were competent. The first one was not reduced to writing, and where an injured party makes statements at different times, we see no reason why all may not be proven, if all be made under a sense of impending death. If in accord, they serve to show the truth of the statement; and if not, then the accused will be benefited by the contradiction. In either case they aid to elucidate the truth.

In Russell on Crimes, page 763, it is said: "It is no objection to the admission of a dying declaration that the deceased made a subsequent statement to a magistrate, which was taken down in writing, and is not produced."

In the case of Rex v. Reason, 1 Strange, 499, three several declarations had been made by the deceased in the course of the same day at the successive in-

tervals of an hour each; the second had been made before a magistrate, and reduced into writing, but the others had not; the original written statement taken before the magistrate was not produced, and a copy of it was rejected. A question then arose whether the first and third declarations could be received; and Pratt, C. J., was of opinion that they could not, since he considered all three statements as parts of the same narrative, of which the written examination was the best proof; but the other judges held that the three declarations were three distinct facts, and that the inability to prove the second did not exclude the first and third; and evidence of those declarations was accordingly admitted.

Judgment affirmed.