## Tyree v. Commonwealth.

(Decided November 6, 1914.)

### Appeal from Laurel Circuit Court.

1. Criminal Law—Continuance.—Where a motion is made for the continuance of a criminal case at the same term at which the indictment was found, upon the ground of the absence of a witness, it is not error for the court to overrule the motion and proceed with the trial, instructing the jury, under section 189 of the Criminal Code, that it must treat the statements attributed to the absent witness, as true.

2. Criminal Law—Statement of Co-conspirator.—Upon a trial for conspiracy to murder, a statement made by one of the conspirators before the murder as to what her co-conspirator would do in carrying out the conspiracy, is competent evidence upon the trial of the co-conspirator.

3. Criminal Law—Continuance—Practice.—Where the affidavit as to what an absent witness would testify has been taken as true, as provided by section 189 of the Criminal Code, it is error to admit proof impeaching the character of the absent witness.

4. Criminal Law—Dying Declaration.—A dying declaration made to different persons upon separate occasions may be shown by parol evidence, although the last statement was reduced to a writing, which was subsequently destroyed by fire.

5. Criminal Law—New Trial—Newly Discovered Evidence.—The general rule is that a new trial will not be granted for newly discovered evidence which is not decisive in character, and which merely goes to impeach a witness; but where the newly discovered evidence bears directly upon the principal issue on trial, and may have a preponderating influence upon another trial, a new trial should be granted, although the newly discovered evidence tends only to impeach one of the principal witnesses.

JOHN M. QUINN, SAM C. HARDIN and B. G. REAMS for appellant,

JAMES GARNETT, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Edgar Tyree and Sallie Mise were jointly indicted for the murder of Ira Barnes near Evans' Ferry, in Laurel County. The tragedy was the result of a charge, repeatedly made by Barnes, that Tyree had stolen Barnes' hog.

The indictment contained five counts; the first charging that the defendants, and other persons unknown to the grand jury, entered into a conspiracy to kill and murder Ira Barnes, and that as a result of this conspiracy, Edgar Tyree did kill said Barnes. The second, third, fourth and fifth counts charged the appellant with the crime of murder, and his co-defendant, Sallie Mise, with being present, and aiding and abetting him therein.

On the second day of the same term of the court at which the indictment was returned, the defendants were, at their request, granted separate trials; whereupon the attorney for the Commonwealth elected to try Tyree first, and his trial was set for the tenth day of the same term of the court.

When the case was called for trial on the tenth day of the term, it was, on motion of appellant, continued, and set for trial on the twentieth day of the term. When the case was called on the last named date, appellant announced that he was not ready for trial because of the absence of two witnesses, Sarah Mink and Amanda Woodall, by both of whom the appellant claimed he could prove that on the Sunday before the killing, Barnes had said he was going to kill Tyree or that Tyree would have to kill Barnes, if he did not find his hog.

The trial judge overruled the motion for a continuance, upon the ground that the affidavit failed to disclose the whereabouts of either of the witnesses; and upon his own motion, the judge ordered a warrant of arrest to issue for both witnesses. In response to the warrant, Sarah Mink appeared and testified on behalf of appellant, and appellant was permitted to read to the jury the statements contained in his affidavit as to what Amanda Woodall would state if she were present; and the jury was directed, as is required by the Code, that

it should take the statements therein attributed to Amanda Woodall as true.

Tyree was living on the farm of James Mise, in Laurel County, about 18 miles from London. James Mise was engaged in business at Corbin, and only occasionally visited his farm; but his wife, Sallie Mise, spent a good part of her time there, with Edgar Tyree and his sister, Nellie Tyree, as her companions.

A few days before the homicide, Barnes claimed he had lost a hog, and charged Tyree with having stolen it. He was seen at different times hunting for the hog; and, on these occasions he made inquiry at the home of James Mise as to whether the hog had been seen; and, on each occasion, it is claimed he said Tyree had stolen his hog and changed the mark on it. On several of these occasions Barnes carried a shotgun which belonged to Humphrey Mise, who lived in the neighborhood.

A few days before the killing, Sallie Mise requested Humphrey Mise to have Barnes return Mise's shotgun, saying she feared there would be trouble between Barnes and Tyree; and Humphrey Mise, in response to her request, secured the return of the gun.

On Tuesday, the day before the homicide, Tyree went to London with Henry Whittaker and Lee Whittaker. While in London Lee Whittaker bought a pistol, and Tyree bought cartridges for a pistol which he had borrowed at Henry Whittaker's house, from Corb Polly. Henry Whittaker was a near neighbor.

Upon their return from London, Tyree spent the night at the home of Henry Whittaker, who, it is claimed, was an enemy of Barnes. When Tyree left Whittaker's house on the following Wednesday morning to go to his own home, he carried with him a pistol which he had borrowed from Corb Polly, and a shotgun that Robert Mise had left at Whittaker's house the night before, for Tyree to take home. After Tyree had returned to his home, he remained in the house until about the middle of the forenoon, sitting by an open window overlooking the public highway, and in plain view of the spot where Barnes was subsequently killed.

The fence around the James Mise property, some two or three hundred yards above the residence, caught fire and burned for several hours. While the fire was in progress Barnes passed along the road, and, seeing Logan Woodall, a tenant on James Mise's place, at work fighting the fire, he assisted Woodall in putting out the

fire and rebuilding the fence. About this time Sallie Mise and Tyree left their residence and started in the direction of the fire, evidently not knowing that Barnes was there, Tyree carrying his gun and pistol with him. When Sallie Mise saw Barnes, she motioned to Tyree, who was walking behind her, and he returned to the house.

After the fence had been put up, Barnes and Sallie Mise started together, walking down the road leading by the James Mise residence, where Tyree lived. When they had reached a point nearly opposite the house, Sallie Mise stopped; and Barnes, becoming suspicious, also stopped and asked her why she did not come on. In answer, she made some remark about the weeds growing in the garden. Barnes was walking several feet in front of Sallie Mise, and was repeating to her the charge that Edgar Tyree had stolen his hog. Upon hearing what Barnes said, Tyree went to the door, and according to his story, he said to Barnes, "Do you say I stole your hog?"; that Barnes replied, "That is what I said;" and he immediately attempted to draw a revolver from his holster, but failed to get it out of the holster in which it was tightly stuck. Tyree grabbed his shotgun and, while standing in the doorway, or upon the top of the steps leading up to the door, he fired upon Barnes, shooting him in the side or back of the head and knocking him to the ground. Barnes then retreated a short distance, whereupon Tyree fired on him with the pistol, again knocking him to the ground. Barnes again arose and retreated still further, when Tyree, who by this time was on the outside of the house, fired at him the third time with the pistol; Barnes' retreat by this time having developed into a run.

Tyree admits he fired the shotgun once, and the pistol three times, making four shots altogether. Barnes did not draw a pistol during the encounter.

Barnes continued to run up the road about two hundred yards, where he fell, mortally wounded. Tyree went at once to the house of Henry Whittaker, where Sallie Mise joined him, about noon. After lingering about ten hours, Barnes died. When Barnes' wife and the other members of his family came to where he was lying upon the side of the road, he told them he had been killed; and, when they said they would send for a doctor, he said a doctor could do him no good; that all he needed was some morphine to ease his pain. Realiz-

ing that he was about to die, Barnes gave several of the people present an account of the trouble, stating how it occurred. Upon examining his wounds, it was found that he had been shot in the side or back of the head by the shot from the gun, and that the pistol ball had entered his back.

Appellant was found guilty and his punishment fixed at confinement in the penitentiary for life. He appeals, alleging that the trial court erred: (1) in overruling appellant's motion for a continuance; (2) in admitting incompetent evidence; (3) in instructing the jury on conspiracy; and (4) that he should have had a new trial on account of newly discovered evidence.

1. The court properly overruled appellant's motion for a continuance upon the ground of the absence of the witness Amanda Woodall. The case having been tried at the same term that the indictment was returned, the trial court properly instructed the jury, under section 189 of the Criminal Code, that it should treat the statements attributed to Amanda Woodall, as true. Sarah Mink's presence was procured, and she testified for the appellant. In this way appellant procured the full benefit of the testimony of his absent witness; and the fact that she was not cross-examined was, perhaps, to his benefit rather than to his detriment.

2. There are complaints of three rulings · of the court in admitting evidence. First, it is contended that the trial judge improperly permitted Humphrey Mise to repeat a conversation he had with Sallie Mise one or two days before the killing, in which she said "It wouldn't be good for Ira Barnes to come back there and name anything more about that hog; it wouldn't be good for him to come back there and name anything about the hog; that Ed had taken all he was going to take; that Humphrey had better get his shotgun away from Ira; and there was going to be trouble if he did not." It is not claimed that Tyree was present when Sallie Mise made the foregoing statement to Humphrey Mise.

There being, in our opinion, sufficient evidence upon the charge of conspiracy between Tyree and Sallie Mise to kill Barnes, to take that question to the jury, the statement of Sallie Mise was competent under the conspiracy charge.

Furthermore, the Commonwealth was permitted to attack the reputation of Amanda Woodall both as to

truth and morals, after the court had instructed the jury to accept the statements attributed to her by the affidavit as true. This was error. The Code provision requiring the testimony of an absent witness to be taken as true where the trial is held at the same term the indictment is found, would be nullified if the testimony could be destroyed by an attack upon the character of the absent witness. The trial at the indictment term was permissible only upon condition that the testimony of Amanda Woodall should be taken as true—not that the affidavit should be read as a deposition and subject to rebuttal, as in cases where the trial is held at a term subsequent to the finding of the indictment. The trial having been directed upon that condition, it was error to permit the Commonwealth to thus annul the condition.

Appellant further contends that the trial court erred in permitting several witnesses to testify as to the dying statement that Barnes made while he was lying upon the road side. This objection is based upon the fact that later in the day, and only a short time before Barnes died, a justice of the peace was sent for, and to him Barnes made a dying statement, which was reduced to writing, and signed by Barnes. The justice delivered that paper to the county attorney, and when the county attorney's office was subsequently destroyed by fire, it is contended, though not distinctly shown, that the paper containing the dying statement was destroyed along with the rest of the contents of the office. Tyree introduced the justice, and by him proved the execution of the paper and its delivery to the county attorney; but when the Commonwealth, upon cross-examination, attempted to prove the contents of the written statement, it was not permitted to do so over the objection of the defendant. The trial court further refused to permit the justice to testify as to the contents of the written statement, or as to what Barnes told him at the time he took the statement.

We think the trial court properly admitted the parol evidence of the several witnesses to prove Barnes' dying statement, it being conceded it was made under the conditions and circumstances which warrant the admission of such a statement. The fact that he made the same or another statement to some other person, who reduced it to writing, does not affect the competency of the first statement, which must stand upon its own merits. If the oral statement of Barnes to the justice had

not been reduced to writing, it could hardly be contended that a failure to reduce it to writing would, of itself, have rendered the statement incompetent; and, if that be true, the fact that the statement was reduced to writing would not make other oral statements, made to other persons, at different times, incompetent.

Furthermore, upon the proof of the destruction of the written statement, the court should have admitted oral testimony to prove its contents. Hines v. Commonwealth, 90 Ky., 64; Hendrickson v. Commonwealth, 24 Ky. L. R., 2173, 73 S. W., 764; Fuqua v. Commonwealth, 24 Ky. L. R., 2204, 73 S. W., 782.

3. The objection to the first instruction is not based upon its form, but upon the fact that it instructs upon the subject of conspiracy, when, it is claimed, there was no evidence to sustain that charge. We are not prepared to agree with counsel for appellant in this contention. The actions of Sallie Mise throughout this unfortunate affair, as above recited in detail, were sufficient to justify the submission to the jury, the question of her participation in a conspiracy with appellant to bring about the death of Barnes.

4. Finally, it is insisted that appellant should have been granted a new trial because of newly discovered evidence. This new evidence relates to the testimony of Humphrey Mise, and would impeach his evidence in one important particular. Mise testified that he was the first person to reach Barnes after he had finally fallen on the road side, and that when he reached him he took from Barnes' pocket a pistol which he had in a holster under his vest, and that the pistol did not hang in the holster, but came out easily and readily.

In support of his motion for a new trial, appellant filed affidavits showing that R. L. Ewell, Frank Whittaker and James Whittaker would testify that Mise told them the pistol did hang in the holster, and that he had to make several attempts to get it out before he was able to do so. It is argued that this testimony is important to appellant, in that it shows, or tends to show, that although Barnes did not fire upon Tyree, he was only prevented from doing so by the fact that his pistol was caught in the holster in such a way that he could not withdraw it. This would corroborate Tyree, who testified that Barnes attempted to fire upon him, but was prevented by his pistol hanging or sticking in its holster.

The general rule is that a new trial will not be

granted for newly discovered evidence which is not decisive in character, and which merely goes to impeach a witness. Knipp v. Commonwealth, 159 Ky., 775.

It appears, moreover, that Frank Whittaker, one of the new witnesses, was sworn as a witness for the appellant, and remained in court during the entire trial. The record further shows that appellant knew, during the trial, what Frank Whittaken would state in this connection, because a question propounded to Humphrey Mise laid the foundation for contradicting him by Frank Whittaker, when Mise was asked if he did not make the statement set out in the affidavit, in the presence of Whittaker. There can be no doubt that appellant knew upon the trial all that Frank Whittaker knew. But appellant declined to attempt the contradiction of Humphrey Mise by Frank Whittaker alone, on account of the latter's mental aberration.

It is also reasonably clear that he did not know that R. L. Ewell would corroborate Frank Whittaker in this respect. In his affidavit, Col. Ewell says:

"On the day the examining trial of Edgar Tyree was called at the court house last summer, I had a conversation with Humphrey Mise on the back portico of the court house. I asked him to give me the particulars of the killing of Ira Barnes by Tyree. He went on to say that it came up over a hog; that Barnes had been down there for several days, I mean down where Mr. Mise then lived, and now lives; that he had loaned him a pistol and a gun; that he got uneasy for fear Barnes might kill Tyree, because Barnes was accusing Tyree of having stolen a hog from him; that on the day Barnes was killed, he was the first one to get to him after he was shot; that Barnes had a pistol on his person and he, Mise, attempted to take the pistol out of the holster, and that it was hung in the holster; that he made a second effort to get it out of the holster, and it was still hung, and he took the strap, holster and all off of the man Barnes. He said several other things that is not necessary for me to mention. I never communicated this to Mr. Tyree, or to any of his friends, or to any one for him, until after his trial and conviction; and incidentally suggested these facts to two of his attorneys in the prosecution of the case against Sallie Mise when some of the witnesses were testifying that Mise had made similar remarks concerning the pistol being hung in the holster to them; and immediately after the case

was submitted to the jury, I made the same suggestion to a brother lawyer who urged that I ought to have revealed it to the attorneys of Mrs. Mise. I was asked by the attorneys of Mrs. Mise about it just after that. I told them in substance what I have stated in this affidavit.''

We are not prepared to say that this newly discovered evidence was not of such a character as would have had a preponderating influence upon another trial. Humphrey Mise's statement to Ewell was made at a different time from his statement to Whittaker. It was not made known to appellant until after the trial; and as it bore directly upon the principal issue on trial, we conclude the appellant should have been given the benefit of it.

For the errors indicated, the judgment is reversed, and the case remanded for a new trial.