## Whitehead v. Commonwealth.

(Decided October 12, 1923.)

### Appeal from Leslie Circuit Court.

1. Homicide—Admissibility of Dying Declarations.—Statements of a wounded person are competent as a dying declaration, where the proper preliminary foundation for its introduction has been laid,

upon the theory that the consciousness of impending death removes all incentive to state an untruth or fail to state the whole truth, and dispenses with the ordinary necessity for an oath and cross-examination.

2. Homicide—Direct Statements as to Expectation of Death not Necessary to Render Dying Declarations Admissible.—It is not essential to the competency of dying declarations that the declarant should state in terms, either that he is bound to die shortly, or that he has given up all hope of life, but what he does say may be aided by and interpreted in the light of the facts and circumstances surrounding him at the time.

3. Homicide—Fact of Death Within Short Time Considered in Determining Competency of Dying Declaration.—In determining the competency of dying declarations, the fact that declarant did die within a comparatively short time after the expression of his belief of approaching dissolution, while not conclusive, will be considered.

4. Homicide—Sufficient Foundation Held Laid for Dying Declaration. —Testimony of twice reiterated statements of deceased that "he would never get well, and believed he would have to die," when considered with direction to his wife to have his body buried at a certain spot, and the fact that he died within three days after expressing that belief the last time, held sufficient foundation for admission of dying declarations.

5. Homicide—Evidence that Deceased Did Not Expect to Die Admissible as Bearing on Weight to be Given Dying Declaration.—After dying declarations and evidence furnishing foundations therefor were admitted for the Commonwealth, it was proper for the court to admit evidence for the defendant showing that deceased did not in fact expect to die, to enable the jury to determine what weight, if any, should be given to the evidence of the dying declarations.

6. Homicide—Determination of Admissibility of Dying Declarations in Presence of Jury Within Court's Discretion.—It is in the discretion of the trial court to hear the preliminary evidence on the question of the admissibility of a dying statement, either in the presence of, or separate and apart from, the jury, if the hearing is properly conducted, and the court is careful in declining to receive, or by admonition, excluding from the jury, incompetent evidence.

7. Homicide—Defect in Instruction on Self-Defense Not Reversible Error.—A self-defense instruction, only telling the jury that defendant, in the exercise of his right of self-defense, had a right "to shoot" the deceased and not that he might also "kill him," though defective, does not require reversal, where the court expressly authorized acquittal, if the jury believed the facts on which the instruction was predicated.

8. Homicide—Instruction Held Not Misleading as Requiring Proof of Self-Defense Beyond a Reasonable Doubt.—An instruction that, if jury believed from the evidence that at the time the defendant

shot and killed the deceased, "if you believe from the evidence beyond a reasonable doubt that he did so do, he believed and had reasonable grounds to believe that he was then in danger of death, held not confusing and calculated to mislead the jury into believing that accused must prove his innocence beyond a reasonable doubt.

LEWIS & LEWIS, JOHN L. DIXON and J. M. BAKER for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellant was charged with the murder of W. H. Day. On his trial he was found guilty and sentenced to confinement in the penitentiary for life, and from that judgment appeals.

Day's son had previously shot and killed the son of defendant, and the latter had caused a vigorous prosecution of young Day which resulted in his conviction. Thenceforward there was bitter animosity between the appellant and W. H. Day, and there were threats by Day against appellant, some of which appear to have been communicated to him.

On the 27th of September, 1922, appellant and his wife, on foot, accompanied by Bob Hall, on horseback, met decedent Day and Miss Zilphia Roberts, each riding horseback, on the highway.

So far as the evidence discloses no word passed between appellant and decedent, but they each seem to have vigilantly watched the other from the time they saw they were about to meet. Each was armed, and just as they passed each other, or just after appellant had gotten slightly beyond Day, as indicated by the shot, Day on horseback and appellant on foot, appellant shot him about four inches to the right of the backbone, the bullet lodging in his spine and resulting in his death twelve days thereafter.

Day fired no shot, but had a pistol in his right hand coat pocket, and there is evidence indicating that he had his hand in that pocket when the parties met, and made one or two efforts to withdraw it therefrom. While the evidence shows appellant fired four or five shots at decedent, there is nothing to show that more than one of

them struck him, and that to the rear of the right side, as above indicated.

The first ground for reversal is that there is shown no sufficient basis for the introduction of certain statements as a dying declaration made by decedent as to the occurrences at the time. The evidence is that decedent was taken to his home on Wednesday, the day he was shot, and remained there until the following Monday, when he was taken on a stretcher across the country to a railroad station and thence to a hospital at Hazard, where he died a week later.

It is in evidence by decedent's wife that during the five days he remained at home he said to her several times, "he would never get well, and believed he would have to die;" and that before they started with him to the hospital he told her to have him brought home and buried on the hill across the branch from his house. With this as a basis, the witness was permitted to state what her husband had told her as to the occurrences at the time of the shooting, which was in substance that he turned his horse to the side of the road and gave them (Whitehead and Hall) room to pass by, and that he did not think about Whitehead doing anything to him until it was done. The witness stated she never saw her husband after he started to the hospital.

Shepherd, son-in-law of deceased, went with him to the hospital at Hazard and remained there with him from Monday until Friday. He testified that before he left deceased on Friday, the latter told him "he would never get well and he believed he would have to die," and in fact three days thereafter he did die. With this as a basis, the witness was permitted to testify that decedent then told him that as he and Miss Roberts were passing by Whitehead drew his pistol and shot him in the back, when he was not doing anything to him at all.

This is the only witness who testifies to having seen or talked to the decedent at any time after he reached the hospital, although Dr. Baker was called to the decedent's home and saw him two or three times there before his removal to the hospital, and he says that he advised Day to go to the hospital and have an X-ray made so as to locate the ball, and that Day agreed to this, but said to him he was going to tell the doctors at the hospital that he had not come there to be cut on unless it was necessary, and

that deceased said nothing to him about dying, and witness never told him he was going to die, but merely advised him to go to the hospital and have the X-rays made and the bullet located and removed. Another witness stated that he helped carry deceased on a stretcher when he started to the hospital, and deceased said to him along the road "that he would get well."

The two last named witnesses, however, only made these statements in their testimony for the defense, after the trial court had already passed upon the admissibility of the evidence upon a preliminary examination of the other witnesses.

That the statement of a wounded person is competent as a dying declaration is universally held where the proper preliminary foundation for its introduction has been laid. It is admitted upon the theory that the consciousness of impending death creates in the mind of the declarant such a solemn conviction that he is about to meet his Maker, that all incentive upon his part to state an untruth, or fail to state the whole truth, is removed, and that this situation dispenses with the ordinary necessity for an oath and the customary right of cross-examination.

It is not essential, however, to the competency of such evidence as a dying declaration that the declarant should state in terms either that he was bound to die shortly, or that he had given up all hope of this life. On the contrary, what he does say may be aided by, and interpreted in the light of the facts and circumstances surrounding him at the time. In other words, his belief that death is impending may be gathered from what he says, taken in connection with the seriousness of his wound, what has been told him by others as to his probable chances, and many other facts and circumstances that might bring about in him that state of mind. In addition to this, in determining the competency of such evidence the fact that declarant did die within a comparatively short time after the expression of his belief, will be, while not conclusive, considered. Cavanaugh v. Commonwealth, 172 Ky. 799; Peoples v. Commonwealth, 87 Ky. 487; Eversole v. Commonwealth, 157 Ky. 478; McHargis v. Commonwealth, 15 R. 323; Pennington v. Commonwealth, 24 R. 321; Jones v. Commonwealth, 20 R. 355; Terrill v. Commonwealth, 13 Bush 246; 1 Greenleaf, section 158.

In the light of this rule and of these authorities, the court is of opinion that the twice reiterated statement of the declarant in this case that "he would never get well and believed he would have to die," when considered in the light of the fact that he had directed his wife, before leaving home, to have his body brought back and buried at a certain spot, and the fact that he died within three days after expressing that belief to Shepherd, brings this case within the rule stated above.

After this evidence was admitted for the Commonwealth it was proper for the court to admit evidence for the defendant showing that deceased did not in fact expect to die, and this evidence was admissible to enable the jury to determine what weight, if any, should be given to the evidence of the dying declarations.

It is in the discretion of a trial court to hear the preliminary evidence on the question of the admissibility of a dying statement, either in the presence of or separate and apart from the jury. Undeniably it is the safer and better practice always to conduct such preliminary hearing in the absence of the jury; but where it is had in the presence of the jury, over defendant's objection, it will not be reversible error if it is properly conducted, and the court is careful in declining to receive, or by admonition excludes from the jury all incompetent evidence. Wilson v. Commonwealth, 141 Ky. 341; Roberson's Criminal Law, section 227; 21 Cyc. 895.

The self-defense instruction is complained of in two respects. The first is that it only told the jury that defendant in the exercise of his right of self-defense had a right "to shoot" the decedent, and did not embrace the language or idea that he might also "kill him" in the exercise of that right.

It is true, technically, the instruction should have authorized, under the conditions predicated in the instruction, the defendant both to shoot and kill in the exercise of his right of self-defense. But such an error has never been held by this court to be a reversible one.

For instance, in the case of Barker v. Commonwealth, 159 Ky. 304, the judgment was reversed for other and different reasons entirely, but the court directed that upon a new trial the self-defense instruction should be modified so as to permit defendant "to shoot and kill" his opponent under the circumstances predicated therein.

Likewise in the case of Reynolds v. Commonwealth, 183 Ky. 375, the court reversed the judgment therein because of two errors in the self-defense instruction, and indicates by its opinion that it would not have been reversed for either of them singly; and this was one of the grounds.

Again in the later case of Hall v. Commonwealth, 196 Ky. 167, the court had the precise question under consideration, and in holding the error was not prejudicial said: "If the phraseology of the instruction, coupled with the testimony in the case, is such that the jury could not have been misled to the defendant's prejudice, the technical error will not be given the broad effect of working a reversal of the judgment."

Clearly in this case, where the court expressly authorized an acquittal of the defendant upon the ground of self-defense if they believed the facts upon which the instruction was predicated, it was not prejudicial error to leave out of the instruction the words "to kill" in addition to the words "to shoot." The jury could not have understood from the phraseology of the instruction that they only had a right to acquit defendant on the ground of self-defense if he shot decedent and did not kill him.

It is likewise contended that the self-defense instruction in its use of the language "beyond a reasonable doubt" was confusing and calculated to mislead the jury into believing the accused must prove his innocence beyond a reasonable doubt. But manifestly the instruction is not reasonably susceptible to any such interpretation. It reads:

"If you shall believe from the evidence in this case that at the time the defendant, Taylor Whitehead, shot and killed the deceased, W. H. Day, if you believe from the evidence beyond a reasonable doubt that he did so do, he, the said Taylor Whitehead, believed and had reasonable grounds to believe that he was then and there in danger of death or the infliction of some great bodily harm at the hands of W. H. Day."

An analysis of this language is convincing that the use of the expression "believe from the evidence beyond a reasonable doubt that he did do so" has reference to the character of evidence to be adduced before the jury may believe that defendant did shoot and kill Day, and had no reference to the character of evidence upon which they must base their belief that defendant believed, and had

reasonable grounds to believe, that he was then and there in danger.

No intelligent jury could have been deceived by the use of this language.

Judgment affirmed. Whole court sitting.