## Vard and Billy Noble v. Commonwealth.

(Decided November 10, 1925.)

### Appeal from Breathitt Circuit Court.

1.  Homicide—Evidence Held to Show that Dying Declaration was Made in Extremis.—Evidence held to show that dying declaration, on which conviction of manslaughter was based, was made in extremis, and hence properly admitted.

2.  Homicide—Oral Testimony as to Dying Declaration Held Admissible, though Deceased Signed and Swore to Written Statement.—Oral testimony as to deceased's dying declaration held admissible, though he signed and swore to written statement, especially where latter, which was used before grand jury, was lost and could not be produced on trial.

3.  Homicide—Deceased's Dying Declaration Held Sufficient to Take to Jury Question of Guilt of Defendant whom Witnesses of Shooting by Codefendant did Not See Fire.—Deceased's dying declaration that defendant, who denied having done any shooting, shot him in back held sufficient to take question of such defendant's guilt to jury, though witnesses of shooting of deceased by codefendant stated that they did not know whether other defendant fired.

4.  Homicide—Undisputed Fact that Deceased was Shot in Back Held to Overcome Preponderance of Testimony that Defendant Shot in Self-Defense.—Undisputed evidence that deceased was shot in back, together with his dying declarations, held to sustain conviction of manslaughter, notwithstanding testimony of all eye-witnesses that defendant shot in self-defense.

A. S. JOHNSON, A. H. PATTON and CHESTER A. BACH for appellants.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

Opinion of the Court by Commissioner Sandidge— Affirming.

Appellants, Vard and Billy Noble, and Bud Noble, were charged in an indictment returned by the grand

jury of Breathitt county with the crime of murder committed by killing Alex Noble. Bud Noble moved for a severance. The Commonwealth elected to try appellants, Vard and Billy Noble. The jury found them guilty of manslaughter and fixed their punishment at confinement in the penitentiary for ten years. Judgment was entered accordingly. They appeal.

All the proof introduced by the Commonwealth as to how this killing occurred consisted of proof by several witnesses of deceased's dying declaration, all of which was admitted over appellants' objection. According to the dying declaration of Alex Noble, he was in the home of Austin Combs sitting before the fire talking to his wife, Stella Combs, who was sick. Austin Combs came into and passed through the room in which they were seated and into the kitchen beyond. Appellants, Vard and Billy Noble, came into the room immediately afterward through the same door that Austin Combs had entered, and Vard Noble said: ''Here sits that God damn Alex Noble.'' As Alex Noble started to rise and about the time he got on his feet, Vard Noble shot him in the back. He then pulled his pistol and in undertaking to discharge it found that it was locked or jammed in some way so that he could not work it. Vard Noble continued to shoot at him. He undertook to leave the room by the door through which appellants had entered, and appellant Billy Noble shot him in the back. He got out of the house and turned and again tried to use his pistol but it wouldn't shoot, and at that time some one from the corner of the house shot him with a shotgun. To establish motive the Commonwealth proved that previous to this occasion deceased, Alex Noble, and the father of appellants, Vard and Billy Noble, had had a difficulty in which deceased shot and wounded their father. The Commonwealth proved by a physician and surgeon and a number of other witnesses who examined deceased after he was shot that two pistol balls entered his back, one near the spine and one in the shoulder, and that another wounded him slightly in the rear part of one of his thighs. In addition to the wounds from the pistol bullets a great number of No. 4 shot had struck him in the breast.

Appellant Billy Noble denied having fired a shot or having taken any part in the difficulty. Appellant Vard Noble admitted shooting at deceased with a pistol, but claimed to have done so in self-defense. According to their testimony they entered the home of Austin Combs

without knowing that Alex Noble was there. Austin preceded them into the house and passed through the room into which they entered. Vard Noble followed him with Billy Noble coming next. When they entered the room and before they discovered who it was sitting before the fire Alex Noble raised to his feet and with his left hand grasped appellant, Vard Noble, by his right hand, drew his pistol and presented it against appellant's body. Vard Noble testified that he grabbed the gun and jerked it to one side and that just as he did so it fired and that he again jerked it aside and it fired again. That that occurred again, and that as soon as he could draw his pistol with his left hand he did so and fired to defend himself, shooting six times in all. He testified that three of the shots fired by Alex Noble penetrated his clothing and exhibited his coat to the jury in corroboration of the statement. Billy Noble corroborated his brother Vard exactly as to how the shooting occurred. Stella Combs, in whose home the shooting occurred and who was sitting within a few feet of the participants in the difficulty, exactly corroborated appellants as to how it occurred. She also testified as did two of her daughters, Nazzie and Goldie, that as appellants approached the house and when Nazzie, seeing them, remarked, "Yonder comes Vard Noble, Billy Noble and Buel," deceased said: "I had better pull my gun, me and them don't stand right," and pulled his gun. Nazzie and Goldie both testified that upon his so saying and doing they, fearing trouble, left the room. The defendants proved by one or two other witnesses that deceased had threatened their lives.

All the questions presented for appellants relate back to the question as to whether or not deceased's statements, admitted as his dying declaration, were shown to have been made *in extremis*. He died from the effects of the wound made by the pistol ball that entered his back near the spine. After the shooting he, though wounded as indicated, succeeded in walking something near a quarter of a mile from the home of Austin Combs where he was shot. The shooting occurred about dark. No one of those at or near Austin Combs' home made any effort to go to him or ascertain the extent to which deceased was injured. His wife in some way learned of his having been shot. She and a party went out to search for him. They found him about eleven o'clock that night, and to those in the party that found him, when asked what the trouble was, he said: "I am killed." From then

until he died, four days later, nothing that he ever said, as disclosed by the evidence, indicates that he ever had any hope of recovery or considered that he was in any other than the immediate presence of death and imminent dissolution. It was proved that repeatedly from the time when first found until his death, in response to inquiries as to how he felt, he would say "I am killed." A doctor was called to administer to him, but it does not appear that deceased had him called or that the doctor ever gave deceased any hope that he might live. The evidence that deceased made the statements introduced as his dying declaration while *in extremis* is much stronger than was the evidence held to be sufficient to authorize the admission of deceased's statement as a dying declaration in Burnett v. Commonwealth, 200 Ky. 767, and Whitehead v. Commonwealth, 200 Ky. 440.

Appellants further object to the admission of the dying declaration upon the ground that the evidence discloses that before his death deceased signed and swore to a written statement which was neither introduced nor accounted for, and that therefore the Commonwealth improperly was permitted to introduce oral testimony as to what the dying declaration was. In Winstead v. Commonwealth, 195 Ky. 484, discussing that question, this court said:

"This contention is upon the theory that both oral and written declarations of deceased are not admissible, and that where the Commonwealth elects to, or can, introduce a written declaration, it being the best evidence, is alone admissible. In support of this proposition, but only where the written declaration is competent, there is some authority, although even upon this proposition reason and the weight of authority are to the contrary. Hendrickson v. Commonwealth, 24 R. 2173; Hines v. Commonwealth, 90 Ky. 64, 13 S. W. 445; Saylor v. Commonwealth, *supra;* 21 Cyc. 979; 1 R. C. L. 531."

In addition it appears from the testimony herein that the written, sworn statement of deceased was used before the grand jury when the indictment was procured and was lost and could not be produced upon the trial hereof. Therefore, in view of the rule above and also for the reason that the written statement had been lost and could not be produced, the trial court properly per-

mitted the witnesses who heard deceased's dying declaration to give it in evidence to the jury.

It is insisted that the trial court erred in refusing appellant Billy Noble's motion for a directed verdict at the close of the testimony, and that the verdict as to both appellants is flagrantly against the evidence. Neither contention can be sustained. As to the contention that there was no evidence against Billy Noble herein, the man who was shot and killed by his dying declaration testified that Billy Noble shot him in the back. Billy Noble denied that he did the shooting. Vard Noble and Mrs Combs, the only other two witnesses who were in the room when the shooting occurred, stated that if Billy Noble fired they did not know it. It readily can be understood how Vard Noble and Mrs. Combs neither noticed whether or not Billy Noble fired his pistol, Vard at the same time being engaged in shooting his own pistol six times, and she necessarily much excited by the tragedy being enacted in her presence and attracted to the principals therein, Vard and Alex Noble. In reality there is as much evidence that Billy Noble fired his pistol and struck deceased as there is that he did not.

One fact appearing in the record by testimony undisputed stands out stronger and more convincing and as testimony possesses more probative value than all the rest of the testimony heard herein. Aside from it there might be some force to appellants' contention that the verdict herein is flagrantly against the evidence. With that fact in evidence by testimony undisputed, appellants' apparent preponderance of testimony from the mouths of witnesses as to how this tragedy occurred disappears. It was proved and the evidence was undisputed that the three pistol balls that wounded Alex Noble struck him in the back. None of the testimony for appellants, by which it was made to appear that Vard Noble shot deceased in his self-defense after having been shot at by deceased some two or three times can be reconciled with that fact. As the witnesses for appellants describe the encounter, the two of them were standing facing each other, deceased, having grasped Vard Noble's right hand with his left, shot at him three or more times with a pistol held in his right hand, while Vard Noble drew his pistol with his left hand and shot it so held six times at deceased. If the tragedy had happened that way the bullets from his pistol could not

have struck deceased in the back as they did. Neither contention can be upheld.

Appellants' trial appears to have been free of error prejudicial to their substantial rights, and the judgment herein is affirmed.