Isa Helen RICHARDSON, Individually; Isa Helen Richardson, as Co–Executor of the Will of Edward Head; Mitchell Richardson, Her Husband; Mark Head, Individually; Mark Head, as Co–Executor of the Will of Edward Head; Georgia Myatt; Eva Bledsoe; Paul Head; Geraldine Head, His Wife; Jerry Myatt; Jimmy Myatt; Julius Myatt; Gary Myatt; Davy Ray Myatt; Judy Garrett, Russell Garrett, Her Husband; Vickie Carpentar; John Carpentar, Her Husband; Mike Bledsoe; Weepa Bledsoe, His Wife; Mike Head; Penny Fairbrothre; Billy Richardson; Lisa Such; John Richardson; Joe Fred Butler, Jr.; Carolyn Curtis; Betty Butler; Joe Fred Butler, Her Husband; J.D. Head; Elaine Head, His Wife, Appellants,

v.

Jackie HEAD; Beverly Head, his Wife; Tommy Head; Philip Head; Nicole Lenahan; Steve Lenahan, her Husband; Amanda Heylmann; Todd Heylmann, her Husband; George Brown; Cecil Brown; Sue Frazier; Donald Frazier, her Husband; Patsye Witty; David Witty, her Husband, Appellees.

No. 2006–CA–001217–MR.

Court of Appeals of Kentucky.

May 11, 2007.

As Modified June 8, 2007.

Discretionary Review Denied by Supreme Court Oct. 24, 2007.

Bobby H. Richardson, Glasgow, KY, for Appellants.

Reed N. Moore, Jr., Tompkinsville, KY, for Appellees.

Before WINE, Judge; BUCKINGHAM and HENRY, Senior Judges.[1]

## OPINION

WINE, Judge.

The Appellants have appealed from the May 30, 2006 order of the Monroe Circuit Court denying their motions to set aside a judgment pursuant to CR 60.02(b)[2][3] and for a new trial. For the reasons set out below, we affirm the trial court.

Edward Head (Edward), a single person with no children, who resided in Monroe County, Kentucky, died on March 18, 2003. He suffered a number of years from multisystem atrophy, similar to Parkinson's disease. During a trial held starting February 1, 2006, Dr. Anthony Carter described several symptoms of this progressive disease, which include rigidity of muscles, loss of control and inability to swallow.

Shortly after his death, a will dated January 24, 2001, and a codicil to said will dated October 3, 2002, each purported to have been signed by Edward, were both

---

1. Senior Judges David C. Buckingham and Michael L. Henry sitting as Special Judges by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Kentucky Rules of Civil Procedure.

3. While the motion before the trial court was styled "CR 60.02(b)," the written argument was directed to allegations of perjury or falsified evidence. Likewise, the arguments before this Court are also directed to grounds based on perjury. During oral arguments, counsel for the Appellants confirmed there was a typographical error before the trial court and the Appellants sought relief pursuant to CR 60.02(c).

admitted to probate in the Monroe District Court. Appellees, Jackie Head (Jackie) and Tommy Head (Tommy), brothers of Edward, had been included in the will. However, in the codicil, Jackie and Tommy and their families were all excluded as beneficiaries. While Mark Head was a co-executor under both instruments, in the codicil, the Appellant, Isa Helen Richardson, was substituted for Sue Frazier Brown as co-executor. There were other changes as well, including a $10,000 executor fee under the codicil as opposed to $1,000 allowed under the will.

On September 18, 2003, the Appellees filed suit in Monroe Circuit Court challenging the authenticity of Edward's signature on the codicil. After discovery was either exchanged or made available for review, the trial, which had been continued several times on motions of both parties, was finally commenced on February 1, 2006. Numerous witnesses were called by the Appellees, each testifying that Edward's ability to speak or write was either greatly impaired or non-existent on or before October 3, 2002, the date he purportedly signed the codicil. The Appellees' handwriting expert, Steve Slyter, testified he did not believe either the signature on the will or codicil was authentic, having been "traced." Dennis Flickinger (Flickinger), an occupational therapist who visited with Edward for several months before and subsequently after October 3, 2002, testified Edward had great difficulty in communicating orally or in writing. He further testified as of October 3, 2002, Edward could not grip a pen in order to write.

Witnesses on behalf of the Appellants gave an opposing opinion that, not only did Edward know what he was doing, he was able to communicate orally and he was also able to write as late as January 2003. Dr. Anthony Carter testified that on Novem-ber 22, 2002, although unable to clearly talk, Edward could write notes. Attorney Douglas Carter and his secretary, Derlinda ("DeeDee") White, testified they witnessed Edward sign the will as well as the codicil to the will in their presence. Clarke Mercer, the Appellants' handwriting expert, testified Edward signed both documents.

The case was submitted to the jury with a simple interrogatory, "Did Edward affix his signature to the Codicil to his Last Will & Testament?" Ten of twelve jurors answered in the negative. A final judgment in favor of the Appellees was entered on March 6, 2006.

The Appellants did not move for a new trial pursuant to CR 50.02 challenging the sufficiency of the evidence. However, on April 13, 2006, they filed a motion to set aside judgment pursuant to CR 60.02(b) and for a new trial based on alleged perjured testimony of Flickinger. Included with the motion were four photos of Edward, one depicting him using a walker, one using a pen, and two showing him holding eyeglasses and a t.v. remote control. There was also a videotape of Edward and Richardson, the co-executrix, as they talked in his bedroom. Because neither the video nor the photos were electronically dated, affidavits from Richardson and Eva Bryant detailed the circumstances surrounding the discovery of the items as well as the dates the video and photos were generated. The affidavits were both signed April 11, 2006. Although the affidavits do not detail when the items were found, presumably it was more than ten days after the trial, but on or before April 11, 2006. Richardson admits the items were in her possession prior to trial.

Also attached to the motions were records from the Monroe County Medical Center Home Health Agency dated Janu-

ary 13, 2002 to January 30, 2003. These records were in the possession of the clinic and were produced to the Appellants on April 7, 2006.

The Appellees filed a response and on May 17, 2006, the trial court entertained oral arguments. Apparently, no testimony was taken. On May 30, an order was entered summarily denying the relief sought pursuant to CR 60.02.

Neither party designated the hearing of May 17, 2006, for consideration by this Court, nor did the trial court make any specific findings of fact. Therefore, we will assume the trial judge only considered the written arguments of counsel, the four photos, the video, the affidavits, and medical records all attached to the motion to vacate.

■ While the Appellants seek relief under CR 60.02(c), it is necessary to consider relief allowed under CR 60.02(b) as the Appellants claim information which impeaches Flickinger was only "uncovered" after the trial.

■ CR 60.02 is a "safety valve, error correcting device for trial courts." *Kurtsinger v. Board of Trustees of Kentucky*, 90 S.W.3d 454, 456 (Ky.2002). The rule is designed to allow trial courts a measure of flexibility to achieve just results and thereby "provides the trial court with extensive power to correct a judgment[.]" *Fortney v. Mahan*, 302 S.W.2d 842, 843 (Ky.1957). The trial court enjoys a great deal of discretion in ruling on matters brought subject to CR 60.02, which we do not disturb, absent an abuse of that discretion. *Barnett v. Commonwealth*, 979 S.W.2d 98, 102 (Ky.1998); *Brown v. Commonwealth*, 932 S.W.2d 359, 361 (Ky.1996).

CR 60.02 ... authorizes relief from a final judgment based upon newly discovered evidence only if: (1) the evidence was discovered after entry of judgment;

(2) the moving party was diligent in discovering the new evidence; (3) the newly discovered evidence was not merely cumulative or impeaching; (4) the newly discovered evidence is material; and (5) the evidence, if introduced, would probably result in a different outcome.

*Hopkins v. Ratliff*, 957 S.W.2d 300, 301–02 (Ky.App.1997), *citing* 7 Kurt A. Philipps, Jr., *Kentucky Practice*, CR 60.02, cmt. 4.

■ To be entitled to relief under CR 60.02, a party must demonstrate "some significant defect in the trial proceedings or evidence at trial, ... such that 'a substantial miscarriage of justice will result from the effect of the final judgment.'" *Wine v. Commonwealth*, 699 S.W.2d 752, 754 (Ky.App.1985), *quoting Wilson v. Commonwealth*, 403 S.W.2d 710, 712 (Ky. 1966).

Thus, the Appellants must overcome two major hurdles to justify a new trial. First, the documents, photos and videotape are newly discovered. Secondly, that the introduction of same would have a "preponderating influence upon another trial." *Tyree v. Commonwealth*, 160 Ky. 706, 170 S.W. 33, 37 (1914).

The Appellants attempt to impeach the testimony of Flickinger, the physical therapist, by use of evidence they "uncovered" after the trial. In *McGregor v. Commonwealth*, 253 S.W.2d 624, 625 (Ky.1952), the Court held generally, "a new trial will not be granted for newly discovered evidence which is only impeaching in its nature. But the rule should be cautiously applied and when the discovered evidence is of such compelling weight that it probably would have induced the jury to reach a different verdict, a new trial will be granted."

In their affidavits, both Richardson and Bryant readily admit that not only are they depicted in the photos or video show-

ing Edward, but further they created the photos or video and possessed these items before and after the trial. The Appellees had no control over any of the photos or video. Although Bryant was not an active participant in the trial, she was a party and was listed in the Appellants' pre-trial discovery as a witness. Further, Richardson's and Bryant's addresses provided in pretrial discovery show they live near each other. Richardson was the co-executrix for Edward's estate and she was present throughout the entire trial. These photos were taken less than one month before Edward allegedly signed the codicil, and the video was made about one week before the codicil was signed. The pre-trial discovery filed by Appellants also describes a video and photo which were taken in September 2002. If not the same photo and video included with the motion to vacate, certainly the affiants Richardson and Bryant should have been aware of the existence of similar items and the importance of such evidence.

Similarly, the medical records from the Monroe County Medical Center were primarily completed by Flickinger. In the pre-trial discovery filed by the Appellees on February 15, 2005, **one year prior to trial,** they list "3 volumes of medical records which were obtained from the Monroe County Medical Center Home Health Office (address given). **Said medical records are available for inspection as described above.**" Both Appellants and Appellees list numerous witnesses associated with the medical center. Thus, Appellants were clearly aware of the existence and ready availability of these records. They cannot claim with any credibility that the photos, documents or video were unknown to them prior to trial, or that they exercised due diligence to produce them for trial. *See Barnett,* 979 S.W.2d at 101; *Young v. Edward Technology Group, Inc.,* 918 S.W.2d 229, 231 (Ky.App.1995).

The Appellants try to avoid the harsh reality of the restrictive nature of CR 60.02(b) by claiming to "rely on the newly provided evidence to prove the falsity of the testimony of Flickinger." (P. 7 of Appellants' brief). They cite the CR 60.02(c) provision that "perjury or falsified evidence" may justify setting aside a final judgment.

Assuming the trial judge examined the documents, affidavits, photos and video, it is easy to understand why he did not believe them to be material, or that they impeached Flickinger's testimony much less prove he gave perjured testimony. First, the affidavits are contradictory. Richardson claimed the video was taken on September 20, 2002, following the family reunion. Bryant claimed the family reunion was the weekend of September 27, 2002. Both claimed the photos numbered 1 and 2 were taken the weekend of September 19, 2002, when in truth, September 19, 2002, was a Thursday. Secondly, the photo of Edward using a walker is not inconsistent with the medical reports that "he took a couple of steps through his environment." (*See* report dated 9–19–02). There is an obvious difference between holding the grips on a walker and holding a pen. The photos of him holding the eyeglasses or remote control show nothing more. Obviously, just as the video demonstrates, someone could have placed those items in his hand. The video plays for about 60 seconds showing Edward's right hand with little or no movement and clearly without any object in his grasp. The video stops for an undetermined amount of time. When it resumes, Edward is suddenly holding a pen in his right hand. Interestingly, the fingers are positioned exactly as before and the hand and arm are still relatively motionless during the entire time Richardson is speaking with Edward. Finally, there is a photo of Ed-

ward signing a paper. The format of the paper, as depicted in the photo, is consistent with the medical records from the Monroe County Medical Center. Each has a date at the top when the service was rendered and a date at the bottom when the document was transcribed. If the photo of Edward with a pen was taken on September 19, 2002, he was only able to initial a report on that date. From the documents submitted, it appears the patient signs or initials the form and later the subjective history is transcribed onto the paper. However, Edward's ability to sign on September 19, 2002, does not reflect his ability to sign on October 3, 2002. Again, the medical records show his grip strength declining between September 19 and October 3 (moderate grip resistance decreases to mild to mild plus resistance). Both the video and photos could be interpreted to support Flickinger's testimony, especially if a jury believed them to be staged.

Finally, the video taken in late September 2002 shows Edward to be an extremely sick man, little hand movement, drooling and mumbling in an inaudible tone. Such evidence would have benefited the Appellees in their claim that Edward was incapable of signing his name.

█ When the trial court could reasonably find that due diligence in discovering new evidence was not exercised, that the new evidence was principally of an impeaching character, or that it was not of the compelling character which would lead to a different result, any one of those grounds would justify the denial of a new trial. *Long v. Scheffer,* 316 S.W.2d 375, 378 (Ky.1958).

We do not find that the trial judge abused his discretion in denying the Appellants' motion for relief pursuant to CR 60.02(c) and therefore affirm the Monroe Circuit Court's judgment and order of May 30, 2006.

ALL CONCUR.