CASE 33—INDICTMENT—MARCH 29.

## Starr v. Commonwealth.

97   193
122   791

APPEAL FROM MARTIN CIRCUIT COURT.

1. DYING DECLARATIONS.—A statement is not admissible as a dying declaration unless it was made under a sense of impending death. And the statements of the deceased that "he would not get well," and that he "could not stand it much longer" are not sufficient to show a conviction that death was impending, especially in view of the fact that he had lived nearly seven months after being shot.

2. DYING DECLARATIONS should be restricted to the act of killing and the circumstances immediately attending it, and forming part of the *res gestae*.
   The declaration of the deceased in this case that he did not know what made accused shoot him, that they had always been good friends, does not conform to that rule, and its admission was prejudicial.

3. EVIDENCE.—It was error to refuse to permit defendant to testify that at the time the shot was fired he believed he had no other means of escape.

4. IT WAS ERROR TO QUALIFY THE INSTRUCTION AS TO SELF-DEFENSE
by telling the jury, in effect, that they could not acquit on that
ground if they believed that defendant "brought on the diffi-
culty" and sought the life of· deceased, or to do him great bodily
harm, there being no testimony on which to base such an in-
struction.

5. RIGHT OF PEACE OFFICER TO CARRY ARMS.—As it appeared that
on the day of the homicide the accused, as constable, had been
engaged in making the arrest of certain parties charged with
crime, and was attending the examining trial that evening, and
on that account he had borrowed the pistol with which he shot
deceased; and it also appears that on the very night of the kill-
ing he was·engaged in attempting to keep the peace as an officer,
the court should have given the instruction asked on the sub-
ject of the right of an officer to carry arms for his protection
while in the discharge of his duties.

KIRK & KIRK, T. S. KIRK, T. W. NEWBERRY AND A. COPLEY
FOR APPELLANT.

1. Two of the jurors were legally disqualified, they being indicted
for crime at the time they were accepted as jurors. (Hender-
son v. Bradshaw, 4 Bibb, 45; Dana, 203; 1 B. Mon., 214.)

2. The court should swear the sheriff .to keep the jury together, &c.,
before they should be permitted to retire, which the court did
not do in this case. (Criminal Code, sec. 245.)

3. Dying declarations .to be competent must be made *in extremis,*
must be a part of the *res gestae,* and must undertake to detail
the facts and circumstances of the killing. (9 Am. and Eng.
Enc. of Law, p. 676; Pace v. Commonwealth, 89 Ky., 204.)

4. The defendant had the right under the law to testify that he be-
lieved that he had no other safe or apparently safe means of
escape but to fire the fatal shot, and the court erred in refusing
to allow him to do so.

5. The defendant was entitled to a simple instruction upon the law
of self-defense. (Cook v. Commonwealth, 86 Ky., 663; Allen v.
Commonwealth, *Idem,* 643.)

6. Constables and peace officers have the right when in the dis-
charge of their official duties to carry upon and about their per-
son concealed deadly weapons, and the court should have so in-
structed the jury.

7. The Commonwealth's Attorney should not make any statement
in the presence of the jury which is directly in conflict with the

evidence and thereby prejudice the rights of the accused, which was done in this case. (Cook v. Commonwealth, 86 Ky., 663.)

'WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLEE.

1. The majority of the grounds for new trial are covered by sec. 281 of the Criminal Code as those not subject to exception under our law.
2. The instructions asked with reference to the right of constables to carry concealed deadly weapons was not a correct statement of our law, which is contained in sec. 1313 of the Kentucky Statutes.
3. The dying declaration of the deceased was properly admitted.
4. There was no misconduct on the part of the Commonwealth's Attorney in his argument to the jury.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

William Starr, a constable of Martin county, was tried and convicted of manslaughter under an indictment charging him and one Underwood, the police judge of Eden, the county seat of that county, with the murder of John James. On appeal from the judgment of conviction he complains of numerous errors. We shall notice only such as appear to be of a serious nature. The deceased was drinking heavily and on the night of the killing was boisterous and quarrelsome. While passing through the streets of the village, and in the hearing of all, he amused himself by singing songs of the vilest character, the words of which were most indecent and vulgar. This was in the hearing of the police judge, town marshal and the appellant. The police judge suggested that the marshal arrest the offender, but that official replied that he would not do so as long as he harmed no one, but when he became sober he would summon him and have him fined. The deceased became involved in a difficulty with one Cassedy, and again with the marshal, kicking the latter's lantern out into the street. After quiet had been restored,

Underwood, Starr, and others went over to Price's, where there was a wedding, and were engaged in general conversation in a crowded room when the deceased came in. What there occurred is testified to by a large number of witnesses whose statements, though not altogether tallying, are less contradictory than might be expected under the circumstances.

The fact that the deceased, with a large open knife in his hand, was making at the appellant when the latter fired, is testified to by nearly all the witnesses, both for the State and for the defendant. Nevertheless, if a fair trial has been accorded the accused, we are to assume, from the finding of the jury, that he was not acting in his necessary self-defense when he fired the fatal shot. The error which most seriously affected his substantial rights and deprived him of such a trial, the appellant urges, is that of the court in admitting the sister and brother-in-law of the deceased to detail to the jury their brother's alleged dying declaration. The sister testified that she heard her brother say, a short time before his death, that "he would not get well," that he "could not stand it much longer."

The question is: Did this language indicate a sense of *impending* death? It does not appear that the deceased had been told that he could not recover, and he had lived for nearly seven months after being shot. The language seems to us rather that of discouragement than of a conviction of impending death. In Vaughn v. Commonwealth, 86 Ky., 431, the language of the declarant was, "he believed he would have to die," and it was held insufficient to constitute a basis for the introduction of the alleged "declaration." "It is the impression of almost immediate dissolution, and not the rapid succession of death, in point of fact, that renders the testimony admissible."

The mere belief of the declarant that he will not get well, but that he will ultimately die from his injuries, is not sufficient to admit his declaration.    (Greenleaf on Evidence, vol. 1, sec. 158.)

The declaration of the deceased was that "he did not know what made Starr shoot him, that they had always been good friends, that he hated to die and leave his family." If the deceased did not know "what made Starr shoot him," the inference necessarily is that he had given the accused no cause for doing so.    It was as if he had said: "I am wholly blameless, and one who has always been my friend shot me without my knowing why he did so."

We can not say that this evidence did not influence the jury. It was certainly calculated to arouse their prejudices and inflame their passions against the accused as one who had shot his friend without cause.    We think it was incompetent and prejudicial.

The testimony of the brother-in-law is that the deceased talked to him on the day before he died about dying, and said "he could not get well, that there was a boy he hated to die and leave, that he hated to die and not know one thing: he would like to know what made Bill Starr shoot him, and that he did not believe he would if Gus Underwood had not have told him to do so."    Here we have no better foundation for the testimony than that laid by the evidence of the sister.

The statement of James that "he would not get well" is far from indicating that he was then resting under a solemn conviction that his dissolution was immediately at hand or closely approaching.    The statement, too, that he did not know why Starr had shot him is repeated and thus emphasized before the jury.    In addition to this the jury are told in effect by the deceased that the accused had shot him for no reason except that he was told to do so by Underwood.

Such a statement, it seems to us, might have strongly preju-
diced the jury against the accused, and if they believed it,
would properly have influenced them to disregard his plea
of self-defense.

In vain might the defendant attempt to show that he shot
the deceased only after he was advancing on him in a drunk-
en frenzy, if the minds of the triers are once filled with the
declaration of a dying man, so admitted before them by the
court, to the effect that there was no cause for the shooting
save an order to do it by an accomplice. Even if the proper
basis for the proof had been made, yet the testimony is in-
competent, as detailed by the sister and the brother-in-law.
In Leiber v. Commonwealth, 9 Bush, 11, and Collins v. Com-
wealth, 12 Bush, 271, it is held that the general rule is that
dying declarations are only admissible in evidence where
the death of the deceased is the subject of the charge, and
the circumstances of the death the subject of the declara-
tions, and such evidence should be admitted only upon the
ground of necessity and public policy, and should be re-
stricted to the act of killing and the circumstances immedi-
ately attending it and forming part of the *res gestae.*

In this case the act of killing was shown by a number of
witnesses and admitted by the defense. The declaration
was not even directed to that act, and if it had been, it was
wholly unnecessary. The statements do not conform in any
particular to the rule laid down in the cases cited.

The question was asked the accused, "Did you or not be-
lieve at the time the shot was fired that you had no other
means of escape but to fire the fatal shot?" but objection
to it was sustained, and this is another ground of complaint.
In Williams v. Commonwealth, 90 Ky., 596, such testimony
was held to be competent as rebutting the unfavorable in-
ference that might be drawn if the accused, having the

chance to do so, failed to state his belief that he was in danger; and so it appears to us as to this testimony.

The instructions are also complained of. The first one submits to the jury the law of murder and is accurate. The second one is on the same subject, but the conviction of the accused of the crime of murder is based in part, and somewhat confusedly so, on the belief of the jury that Underwood was present at the killing and aided, encouraged and advised Starr to do the shooting. The proof disclosed that Underwood was present, and some witnesses testified that during the difficulty he said: "Put it to him;" and while Underwood swears that he only cried out to the town marshal to "arrest him," or "arrest them," yet it was error to predicate the guilt of the accused upon the conduct of Underwood. Such an instruction, in view of the admission of the declaration of the accused that Starr had shot him only because Underwood had told him to do so, must have been extremely misleading and prejudicial.

The third instruction correctly gave the law of manslaughter, and the fourth invested the jury with the usual discretion as to convicting for the lesser crime. The fifth told the jury that mere threats made by James to kill Starr did not justify the latter in killing the former unless Starr believed that James was about to execute his threats and take his life. This instruction is confusing and ought not to be given. The sixth instruction properly gave the law of self-defense except for the words of qualification appended to it: "Unless the jury should believe that the defendant, William Starr, brought on the difficulty with James, or aided or assisted or encouraged Underwood to bring on the difficulty with said James, and sought his life or to do him great bodily harm or injury,

and if they so believe they can not acquit on the ground of self-defense and apparent necessity."

There is no testimony on which to base such an instruction in this case. Every witness to the transaction testifies that James commenced the trouble in the room where the killing occurred, and if the instruction pointed to any act of the accused outside of that room which might have "brought on" the difficulty, he seems to have abandoned it before the shooting. The simple instruction on the law of self-defense, offered by counsel for the accused, should have been given.

It appears that on the day of the homicide the accused as constable had been engaged in making the arrest of certain parties charged with crime, and was attending the examining trial that evening. For this reason he had borrowed of one Price the pistol with which he shot the deceased. It also appears that he was engaged on the very night of the killing in attempting to keep the peace as an officer. For these reasons, we think the court should have given the instructions asked on the subject of the right of an officer to carry arms for their protection while in the discharge of their official duties.

Other errors are insisted on, involving the competency and conduct of certain jurors, the speech of the attorney for the Commonwealth etc., which do not seem to be of any significance.

For the reasons indicated, however, the judgment is reversed with direction to grant the defendant a new trial and for further proceedings consistent with this opinion.