## Burnett v. Commonwealth.

(Decided November 2, 1923.)

### Appeal from Lee Circuit Court.

1. Homicide—Evidence Sufficient to Justify Conviction for Manslaughter.—In a prosecution for homicide, in which defendant claimed self-defense, evidence held sufficient to justify a conviction for manslaughter.

2. Homicide—Sufficient Foundation Held Laid for Dying Declaration.—A statement by deceased, "I am shot and killed," in connection with the fact that he had been shot three times and died three days latter, was sufficient evidence of his belief in impending death to warrant the admission of his statement made thereafter as to what had occurred.

3. Homicide—Dying Statement as to Circumstances of Meeting Held Admissible.—Evidence of a dying statement by deceased as to the circumstances of his meeting with defendant just before the killing, although not showing how or when the shooting started, held admissible.

4. Criminal Law—Affidavit as to Separation of Jurors Held Not to Show they had then been Accepted.—An affidavit of officer that he was in charge of jurors "who had been selected to try the case," and that they became separated, did not show they had then been accepted, so as to require a new trial, under Criminal Code of Practice, section 244.

5. Criminal Law—Separation of Jurors Before Acceptance Not Reversible Error Requiring New Trial.—Under Criminal Code of Practice, section 244, it is not prejudicial error requiring a new trial for the jurors to separate after selection but before acceptance by both parties.

BLAKEY & BLAKEY for appellant.

THOS. B. McGREGOR, Attorney General, and EDWARD L. ALLEN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Affirming.

Warren A. Burnett killed Grant Shinn on a street in Beattyville about eight o'clock on an evening in Sep-

tember of 1922.   He was tried in the Lee circuit court, convicted of manslaughter and sentenced to confinement in the state penitentiary for twelve years.   His motion and grounds for a new trial having been overruled, he has appealed to this court, assigning various errors for a reversal of the judgment.

The account of the homicide as related by appellant is that shortly before the shooting he met his daughter on the street, who told him that deceased had accosted her in the dark on her way to the grocery store and had made improper suggestions to and attempted to assault her; that he told his daughter to go home, and immediately started out to find the deceased, and, finding him, asked him for a cigarette, and the deceased told him he had no cigarette, but said, "I have a damn good cigar," whereupon he remarked that he did not smoke cigars, and asked the deceased if his name was Shinn, to which the latter replied yes, and then appellant said, "You are the man that mistreated my daughter a while ago," and deceased raised up and said, "If I did, what the hell you going to do about it," and at the same time appellant grabbed him and he jerked a pistol out of his right hip pocket, and then appellant began shooting.   Appellant's young daughter corroborated his testimony as to the deceased's making improper suggestions to her and as to her reporting his conduct to her father.   Appellant had two pistols after the shooting, one of which he delivered to a relative, after which he disappeared and was not seen again until arrested several weeks later.   He testified that one of the pistols did not belong to him, and that he had taken it from Shinn at the time the shooting occurred.

The Commonwealth introduced several witnesses who had been intimately associated with the deceased for several months, and none of them had ever seen him carry a pistol, nor had the man with whom he came to Beattyville that evening seen him with one. It was proved by one witness that Shinn was sitting on the sidewalk smoking when appellant approached him and stopped, and shortly thereafter fired three shots at him, two of which were fired while Shinn was seated.   It was further shown that appellant was intoxicated that evening, and only a few minutes before the tragedy left a barber shop in the town after threatening to shoot up the town.   After appellant was arrested he stated to several persons that he had not

done the shooting, and also asked the name of the man who was shot.

It is the first contention of appellant that the trial court should have granted a new trial on the ground that the verdict was flagrantly against the evidence. Day v. Commonwealth, 197 Ky. 730, is relied on by counsel. In that case the judgment was reversed because the verdict was flagrantly against the evidence. We can not, however, agree with counsel that the evidence of guilt in that case was stronger than the evidence for the Commonwealth in this case. In the case at bar the testimony for the Commonwealth shows that appellant was drinking on the evening in question, had threatened to shoot up the town, and actually assaulted and shot the deceased when the latter was doing nothing to him. It is true that appellant said he approached the deceased in a friendly manner and asked him for a cigarette, and when he accused the deceased of mistreating his daughter the latter started to assault him. But the Commonwealth's evidence shows that two of the shots were fired while the deceased was sitting down, and furthermore, it indicates that appellant was bent on trouble that evening, and Shinn was so unfortunately situated as to be the victim of his purpose. In our judgment the evidence was ample to justify the verdict of guilty.

Another error assigned is the admission in evidence of a dying declaration made by deceased. Appellant contends that it was not made *in extremis* and was therefore inadmissible. Esker Correll testified that shortly after the shooting, and while Shinn was in the drug store, the witness went in to see him as he lay on the floor, and Shinn said, "Shorty, will you see that I am taken care of? I am shot and killed." It is said that this statement does not show that Shinn was then laboring under the conviction of impending death. It is true that no other evidence was introduced showing the state of his mind at that time, but in our opinion a fair interpretation of the language used is that he believed he was about to die and wanted his friend to see that he was taken care of. In fact he stated, "I am shot and killed." This statement, in connection with the fact that he had been shot three times and died three days later, was, under the recent case of Whitehead v. Commonwealth, 200 Ky. 440, sufficient evidence of his belief in impending death to warrant the admission of his statement as to how the shooting

had occurred. It was that appellant "asked him for a cigarette, and he told him he didn't have any cigarette, he had a cigar, and offered Mr. Burnett a cigar, and he refused to take it, and he said Mr. Burnett said to him, 'What would you do if I were to make it so smoky for you you couldn't see?' which he said it shocked him so bad he couldn't say anything." This statement does not show how or when the shooting started, but it does show the circumstances of the meeting, and it is not, as contended by appellant, incompetent because not restricted to what occurred at the shooting, for it is a statement of the circumstances leading up to the shooting and was competent as tending to show whether it was unprovoked or warranted. Starr v. Commonwealth, 97 Ky. 193, relied on by appellant, is wholly inapplicable, and is in no way militant to the admission of this statement, as will be seen from an examination of the opinion in that case.

The final insistence of appellant is that he should have been granted a new trial because a number of the jurors, after they had been accepted by the parties, were allowed to separate in violation of section 244 of the Criminal Code. That section of the Code provides that jurors, in cases in which the punishment that may be inflicted is capital, after they are accepted, shall not be permitted to separate, but shall be kept together in charge of the proper officer. Appellant filed an affidavit of the deputy sheriff on the motion for a new trial in which that officer stated that he was put in charge of the members of the jury who had been selected to try the case of Warren A. Burnett on February 12th; that he kept them in certain designated rooms at a hotel in Beattyville that night, but about 8:30 p. m. he left them and went on an errand to a grocery store, and was away from them about five minutes; that on the following morning he took some of the jurors from the court room down into the yard and one of them remained in the court room. Two other affidavits were filed showing that the hotel at which the jurors remained on the night in question did not have a good reputation. The trial court, in overruling the motion for a new trial, stated in the order that the affidavit in support of the ground referred to did not show that the "separation of jurors complained of occurred after they were accepted by the parties, and, it appearing that during the time deputy sheriff W. M. Sparks had charge

and custody of said jurors they had not been accepted by the parties," the motion and ground for a new trial are overruled.

It will be noted that the affidavit of Sparks does not say that the jurors had been accepted by the parties, nor does it directly aver that they had been selected. It does aver that he was put in charge of the members of the jury who had been selected to try the case. The averment that they had been selected was merely incidental to a recitation that he was in charge of them, had kept them in a hotel, and had permitted them to separate. It does not state that they had been accepted. In view of these facts the case falls directly within the ruling of this court in Bowman v. Commonwealth, 146 Ky. 486, where, in passing on a similar question, it was said:

"It is conceded that they had qualified themselves for jury service; but this fact alone did not require that they should be kept together. Section 244 of the Criminal Code provides that they shall not be permitted to separate after they are accepted. This necessarily means accepted by both the Commonwealth and the accused, and while to our mind the better practice in felony cases, and particularly those in which the death penalty may be inflicted, is to keep the jurors together in charge of an officer selected and sworn by the court for that purpose at all times after they have qualified for jury service, still the provision of the Code does not make this mandatory, and the failure of the judge so to do could not be treated as reversible error."

It results that it was not error to refuse a new trial on this ground.

Perceiving no error in the record prejudicial to appellant's rights, the judgment is affirmed.