## Sparks v. Commonwealth.

(Decided October 2, 1928.)

## Appeal from Jackson Circuit Court.

1. Homicide.—Whether defendant, prosecuted for murder, was justified in shooting deceased, held question for jury.

2. Criminal Law.—Court of Appeals has no control over juries as to what witnesses they shall or shall not believe.

3. Homicide.—Evidence of shooting of deceased by defendant held to sustain conviction for manslaughter.

4. Homicide.—Where evidence showed that immediately after he was shot deceased stated to those present that he was killed, and it was shown that deceased had no hope of recovery when making statements, dying declaration by deceased that he thought defendant was good friend and did not know why he shot him, and that he was doing nothing at time he was shot, held competent and properly admitted.

5. Criminal Law.—Court of Appeals cannot say whether defendant and his witnesses correctly narrated events at time of shooting and prior and subsequent thereto.

L. C. LITTLE for appellant.

J. W. CAMMACK, Attorney General, and CLIFFORD E. SMITH, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Logan—Affirming.

The appellant was charged by indictment with the crime of murder committed by shooting and wounding Elmer Martin, from which wounds Martin soon thereafter died. Upon his trial he was found guilty of manslaughter and his punishment fixed at 21 years in the penitentiary.

The evidence on behalf of the commonwealth discloses that appellant shot and killed Elmer Martin without apparent cause. The family of the appellant had been assisting John Martin, the father of the decedent, at a "cane stripping" on the night of October 6, 1926, A number of other persons had also assisted John Martin in this work. Appellant and John Martin had left the cane field together, and when they reached the home of Martin they sat down in front of his house, and while they were talking Elmer Martin came out and also sat down with them. Appellant was lying on the ground, as was also Elmer Martin. Some of the witnesses testified that appellant was either drunk or asleep, or that he was

pretending to be asleep. His wife tried to arouse him so they could go home, and Elmer Martin suggested that she leave him alone until he should wake up. While he was lying on the ground, he drew his pistol and fired four shots at Elmer Martin, who was also lying on the ground. One of the bullets penetrated his right hand and another found lodgment in his neck. He died the next morning. Appellant immediately left the home of Martin, and within a day or two thereafter he left the state and went to Illinois, where he remained for some months, when he returned to Jackson county and surrendered to the officers. If the evidence of the commonwealth is true, appellant was guilty of deliberate murder.

On the other hand, appellant testified that Elmer Martin came to where he was and that they had some unfriendly words. Elmer Martin charged appellant with having prevented his obtaining his home school, with having failed to go on his father's bond, and with having circulated reports derogatory to the character of his sister. Appellant, so he testified, apologetically denied some of the charges and justified himself as to the others. Elmer Martin became enraged, drew his pistol, and fired at appellant, when, to save his own life, he drew his pistol and shot him. He is corroborated by his children who testified in the case, and, in a manner, is corroborated by other witnesses. He showed by evidence that John Martin, the chief prosecuting witness, was not present when the shooting occurred. It was also testified in his behalf that the sister of Elmer Martin stated at the time in calling to her father that "Elmer missed appellant when he shot at him," and that appellant shot Elmer. Appellant introduced a number of witnesses showing that Elmer Martin had made threats against him based upon the supposition that appellant had prevented his obtaining a contract to teach school in his home district.

The question as to whether appellant was justified in shooting Elmer Martin was one for the jury. If the jury had believed the evidence offered in behalf of appellant, doubtless he would have been acquitted. But this court has no control over juries as to what witnesses they shall or shall not believe. The jury with some modification or allowance must have believed the witnesses for the commonwealth. There is no merit in the contention that the verdict of the jury is not supported by the evidence.

The chief reliance of appellant for a reversal of the judgment against him is that the court admitted incom-

petent evidence prejudicial to his rights. It is the only ground for reversal urged by appellant in his brief. He contends that the dying declaration of Elmer Martin should not have been admitted because the evidence does not show that it was made under a sense of impending dissolution. The evidence shows that immediately after he was shot Elmer Martin stated to those present that he was killed. He repeated this statement from time to time, and it is clearly established that he had no hope of recovery at the time he made the statements testified to by the witnesses. The substance of his statement was that he thought appellant was as good a friend as he had in the counnty, and that he did not know why he shot him. He also said that he was doing nothing at the time and was sitting down when he was shot. Probably the dying statement of Elmer Martin is best expressed by the witness Bob Tanksley, who testified on that point as follows:

> "He said that he was killed. I asked him who done it, and he said, 'George Sparks.' And I said, 'What for, Elmer?' And he said, 'I do not know.' I said, 'Did you have any trouble last night before this occurred, any dispute or argument?' And he said, 'No.' And I said, 'What did he do it for then?' And he said, 'I do not know; I do not know.' I says, 'Was you drunk or drinking?' And he says, 'No.' And I says, 'Was George?' And he said, 'He was drunk.' "

This embraced the substance of his dying declaration, except the statement made to other witnesses that he was sitting down at the time he was shot. Under the authority of Mays v. Comlth., 200 Ky. 678, 255 S. W. 257; Comlth v. Matthews, 89 Ky. 287, 12 S. W. 333, 11 Ky. Law Rep. 505; Griffin v. Comlth., 204 Ky. 783, 265 S. W. 327; Thomas v. Comlth., 195 Ky. 623, 243 S. W. 1; Caudill et al. v. Comlth., 217 Ky. 403, 289 S. W. 371; Green v. Comlth., 207 Ky. 188, 268 S. W. 1081; Lowery v. Comlth., 191 Ky. 657, 231 S. W. 234; Pennington v. Comlth., 68 S. W. 451, 24 Ky. Law Rep. 321, the evidence was competent and properly admitted.

No complaint is made about the instructions, and there are no reasons for complaint on that score. It is not for us to say whether appellant and his witnesses correctly narrated the events at the time of the shooting, and prior and subsequent thereto. In a trial free

from errors a jury has said that he is guilty of manslaughter, and no reason is pointed out which would authorize us to disturb the verdict of the jury.

Judgment affirmed.