## Smith v. Commonwealth.

(Decided April 23, 1929.)

G. B. STAMPER for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

On Sunday afternoon, July 29, 1928, the appellant, Asberry Smith, 18 years old, killed Andy Mays near Junior Hall on Long's creek, in Breathitt county. He was found guilty of murder, and his punishment fixed at life imprisonment.

Since one of the grounds relied on for a reversal of the judgment is that the verdict is flagrantly against the evidence, the facts must be stated in some detail.

The substance of the evidence introduced by the commonwealth was that Andy Mays and several companions went to Junior Hall that morning to attend church services. After staying awhile and learning that the meeting was not to begin until that afternoon, they started away. Mays and one or two of his friends were walking down the road with three girls. Asberry Smith and several of his companions on their mules overtook them. In a spirit of fun, Mays struck the front legs of Smith's mule with a little riding whip, causing it to jump; whereupon Smith alighted and cursed him, and told him that he would make his mule throw him. Mays responded that he did not know his mule would scare, but Smith continued cursing. Mays told him he was drunk; to get on his mule and go on, as he did not want to have trouble with him. Smith did not do so at once, but Mays and his friends got on their mules and rode on. After going some 200 yards, Mays again got off his mule and renewed his

walk with the girls, when Smith and his companions again overtook them. Smith again cursed Mays for having struck his mule, and Mays again told him he did not intend to make him mad; that he was his friend; that he did not have anything to hurt him with and offered to let Smith search him. He again told Smith he wanted no trouble; that he was just a boy, and to go on away. Smith replied with an oath that he was just the right age to kill a man, and "if I am just a boy I will kill you quicker than a man will," and said that he had a pistol with only five empty shells in it, showing the imprint of the weapon in his pocket. Steve Turner, one of Smith's group, walked up to Mays and laid his hand on him; and Peter McIntosh, one of Mays' group, shoved him back, and then Turner began crying. McIntosh told the crowd there was no use of "racketing," and for them all to go home. Mays went over to Turner and told him Peter did not intend to make him mad and that he (Mays) was a friend to all of them. While Mays was undertaking to placate Turner and had one hand on the fence and the riding whip in the other hand, Smith jerked his pistol from his overalls bib and shot him. Mays ran to a nearby home, where he died the next day.

According to witnesses for the commonwealth Mays had no weapon of any kind. They admitted his party had two or three drinks of liquor earlier in the day. All agreed there had never been any trouble, or ill will between any of the parties involved.

The substance of the evidence introduced by the defendant and his witnesses was that Smith had gone to Sunday School that morning with a pistol in his pocket, expecting to take it to Enoch Stamper that day. As he and his companions were going down the road at the time indicated, Mays struck his mule and called him a "G—— d—— corn-eating s—— of a b——." Defendant got off his mule and remonstrated with Mays. One of his friends suggested that they go back down the road; whereupon Mays, with an oath, demanded that he go with him. Defendant says that in a little while he went up the road with his friends, and Mays was there; that he again whipped him and his mule and cursed him; that he told Mays he did not want to have any trouble, but two of Mays' companions told him to "stay with him, I am with you." McIntosh shoved Turner, and then Mays came around the mule with his hand in his pocket and said: "I am going to kill that G—— d—— corn-fed s—— of a b——,"

and then the defendant fired to save his own life. The defendant denied cursing Mays at any time, although the latter invited him to do so, and insisted on fighting. He says he saw a pistol in Mays' front pocket. He admits having told Mays during the first difficulty that he had a pistol. Several witnesses essentially corroborated the defendant as to these occurrences. It was proved by them that Mays and his crowd had a quart of whisky during the day. A witness testified that on the preceding Sunday about the same place there was some suggestion that Asberry Smith was going with a certain girl, who had refused to go with Mays, and Mays then cursed Smith, and said he was not going to get that girl. He shoved his hand in his overcoat pocket and invited the witness to feel it. Witness said he had a "volver" pistol, which he described as not being an automatic. Upon being reminded that it was the middle of July and quite warm the witness changed his testimony and said it was a raincoat and not an overcoat. But none of this is shown to have been brought to Smith's knowledge.

Nothing is better settled in our jurisprudence than the rule that, where the evidence is of the conflicting character heard on this trial, the court will not interfere with the verdict of a properly instructed jury. It would be a vain repetition to cite authority to this effect.

The second contention made by appellant is that the court erred in admitting a statement of the deceased as a dying declaration. Rev. William McIntosh testified that he saw Mays the afternoon he was shot, and, when asked what he said with reference to his condition, the witness answered: "Well, he said he was killed." He did not, in the hearing of the witness, ever express any hope of recovery. The statement of the deceased is brief, and in abbreviated form gave only some of the circumstances of the shooting as related by the witnesses for the commonwealth. Even if inadmissible, it could not have been prejudicial. But we think it was competent under the well-known and oft-repeated test controlling the admission of this kind of evidence. Whitehead v. Commonwealth, 200 Ky. 440, 255 S. W. 93. See Burnett v. Commonwealth, 200 Ky. 765, 255 S. W. 545, and Foure v. Commonwealth, 214 Ky. 620, 283 S. W. 958, where similar expressions were held sufficient to indicate a sense of impending death.

Complaint is also made of the reasonable doubt instruction. But it was in a form often approved and the

contention of error cannot be sustained. See Salyers v. Commonwealth, 229 Ky. 153; 15 S. W. (2d) —, in which this subject is treated.

The defendant has had a fair trial, and must suffer the consequences of his unfortunate act.

The judgment is affirmed.