## Williams v. Commonwealth.

(Decided June 4, 1929.)

328

J. RIVERS WRIGHT for appellant.

J. W. CAMMACK, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

The law is exacting the life of appellant, Lloyd Williams, colored, under a verdict of a jury finding him guilty of murder and fixing his penalty at death, as authorized by section 1149 of the Statutes.

The facts are these: About 11 o'clock on Sunday night, January 8, 19128, H. R. Porter the manager of a gasoline filling station, was walking home on Chestnut street, in Louisville. A negro man asked him where he was going, and he responded, "Up the street a little way." The negro then said: "I will walk along with you," to which Mr. Porter responded, "All right." When they reached a point nearly opposite Porter's home he said, "Well, I will have to leave you here; this is as far as I go." The negro replied, "Just as well; you have gone far enough; stick them up." Porter responded, "All right, I will," and stooped over to put down a basket in which he had carried his supper, but before he could raise up and put up his hands the negro shot him in the abdomen. He died early Tuesday morning. The murderer was a young yellow negro, wearing a sheepskin coat and dirty gray cap.

The foregoing is the substance of a statement made by the deceased immediately after being shot. His wife heard the pistol shot, and, upon opening the door, her husband staggered in, exclaiming that he had been shot, and saying, "I am done for; I am gone." The description given by Mr. Porter fitted the appellant.

One of the grounds relied on by appellant for a reversal of the judgment is that these statements were incompetent as evidence. There is no merit in the contention for they were clearly admissible as res gestae, Deacon v. Commonwealth, 162 Ky. 188, 172 S. W. 121; Norton's Adm'r v. Winstead, 218 Ky. 488, 291 S. W. 723, and also as having been made under the sense of impending death. Roberson's Criminal Law, sec. 439 et seq.; Burnett v.

Commonwealth, 200 Ky. 765, 255 S. W. 544; Smith v. Commonwealth, 229 Ky. 159, 16 S. W. (2d) 775.

The evidence connecting appellant with the commission of the crime consists of proven circumstances and admissions. Lulie Mitchell testified that she had been with appellant during the day; that he left her in his room about 9 o'clock, at which time he wore a sheepskin coat and light cap, and returned about midnight, and exchanged these garments for a light overcoat and a hat, and again went out. She saw appellant on the following Monday afternoon, when he told her that he was in trouble, and a few days later he told her that he had shot a white man on Chestnut street, and wanted some money with which to get out of the city. Jessie Tolbert testified that on Monday morning following the shooting of Mr. Porter appellant told her that he needed some money; that he had held up a fellow the night before, but did not get any; that he had walked down the street with him, and told him to put down his basket, but he did not take any chance, and had shot the man, but did not think he killed him. Several other witnesses stated he had told them he was in trouble, and tried to borrow money from them.

Robert Wheatley testified that, about 12 o'clock on Monday night, appellant had handed him a sheep-lined coat with a gray cap in the pocket, saying, "There came the law down the street; he said he was hot"; that he "didn't want the law to see him with the coat on and that he had pulled a job on Chestnut street." He then went out and jumped in an automobile and backed away hurriedly. In this latter statement the witness is corroborated by two police officers, who say that they had been waching the defendant, and undertook to arrest him, when he got away in the manner stated. It is also shown that upon two other occasions the defendant escaped from the officers, on one occasion ignoring pistol shots fired at him. When Williams got away in the machine on Monday night, the officers arrested Wheatley, and the coat and cap introduced in evidence were taken from him. These were identified by several witnesses as being the property of appellant, and Lulie Mitchell stated the garments were the ones worn by Williams on the Sunday night in question.

The cheif of detectives and other officers testified that, when arrested, Williams stated he had spent that

Sunday night with Mattie Cash on Twenty-First street, and that he admitted that a sheep-lined coat and cap exhibited to him belonged to him, and that he had turned them over to Wheatley to keep for a short while.

The defendant denied any connection with the tragedy, and testified that he had spent the entire night with Lulie Mitchell, and had not left her between 9 and 12 o'clock, as she testified. He denied ever owning a sheeplined coat, and contradicted every witness, except the officers testifying as to the escape, and some of those who had stated he had sought help with which to get out of town. He explained that his actions on these occasions were because he had been pursued by the officers ever since he had been released from the penitentiary, and because he had heard that he was wanted for grand larceny.

There was some evidence of contradictory statements by Lulie Mitchell and Robert Wheatley. Two former convicts confined in the Jefferson county jail with Wheatley and the appellant testified to a conversation between them, in which Wheatley said he knew that Williams had nothing to do with the killing and had not killed anybody. Both of these witnesses admitted they had been engaged in the unlawful sale of narcotics, in which business appellant admitted he also had been engaged since his release from the penitentiary, where he served a term for storehouse breaking.

The evidence amply sustains the verdict.

As a ground for reversal of the judgment, appellant urges upon us that the court erred in refusing to grant him a continuance because of the lack of preparation for trial. It is shown that the defendant was indicted on January 26th. On the 27th he was arraigned, and his case set for trial March 2d, and D. J. Bonner was appointed by the court to defend him and accepted the appointment. On March 1st J. Rivers Wright, another attorney, notified the commonwealth's attorney that on the calling of the case the next day he would move for a continuance. He did so, and, in support of the motion, filed the affidavits of the defendant and his mother to the effect that the defendant had not been able to employ counsel until March 1st. The defendant swore that he had been confined in jail, and had not been able to communicate with his relatives or secure counsel of his own choosing. His mother stated that she had made several efforts to see and talk with him, but was unable to do so

until March 1st. These statements were contradicted by the affidavit of prison officials. They further stated that Mr. Bonner conferred several times with Williams while he was confined in jail. Bonner stated in his affidavit that he was notified on February 28th that the defendant had employed an attorney, and that he had made a motion to withdraw from the case, but it was never acted upon. He stated that he did not prepare the case for trial, as the defendant told him he need take no further steps, as Mr. Wright would represent him on the day of the trial. Mr. Wright, by affidavit, stated that he was employed on March 1st and could not properly prepare the case for trial in such a short time.

To the credit of the profession, it may be said that attorneys appointed by the court to defend one charged with crime, without any expectation of compensation, have been just as diligent in the performance of that duty as if they were receiving lucrative fees. The defendant had an attorney representing him for a period of more than one month before his trial. It would be subversive of justice if the court should continue a case on the ground that an attorney was not employed until too late to prepare it for trial.

The record discloses that both of these attorneys represented the defendant on the trial, and it does not appear that his case was prejudiced in any way by reason of the refusal to continue it.

In Sizemore v. Commonwealth, 108 S. W. 245, 32 Ky. Law Rep. 1154, counsel was not employed until the day the trial began, although the accused was not placed on trial until five days after he was indicted. No reason being given for not having sooner employed counsel, it was held that the refusal to grant a continuance was proper. Other analogous cases where want of preparation for trial by counsel was submitted as grounds for a continuance and held by this court as insufficient are Carpenter v. Commonwealth, 92 S. W. 552, 29 Ky. Law Rep. 107; Owen v. Commonwealth, 181 Ky. 257, 204 S. W. 162; Hill v. Commonwealth, 191 Ky. 477, 230 S. W. 910; Graham v. Commonwealth, 200 Ky. 161, 252 S. W. 1012; and McQueen v. Commonwealth, 224 Ky. 89, 5 S. W. (2d) 487.

The granting or refusing a continuance is a matter resting largely in the discretion of the trial court, and it is the uniform practice of this court not to reverse a case

because of refusing a continuance, unless it is clearly manifest that in the particular case there was an abuse of that discretion and the defendant was prejudiced thereby. The constitutional rights of the appellant respecting representation by counsel were fully protected, and there was no abuse of discretion by the trial court in denying a continuance.

The only other reason assigned for a reversal is that the court should have granted a new trial on the ground of newly discovered evidence. There are several affidavits of prisoners in the Jefferson county jail as to what the witness, Robert Wheatley, had said about the case. Most of them relate to the conversation about which two witnesses had testified on the trial. Every one of them tends to impeach or discredit witnesses who testified for the commonwealth, and principally are cumulative. Such character of newly discovered evidence is universally held not to authorize the court to grant the defendant a new trial.

The affidavit of a man employed in a gasoline filling station some distance from the one at which the deceased was employed, and eight squares from the scene of the crime, was to the effect that on that Sunday night about 10:25 o'clock a yellow negro with a sheepskin coat was seen near his station acting in a suspicious manner, and the affiant believed he could identify the negro. The argument is made that such description does not fit the defendant, and that it may be presumed that this was the man who shot Porter. The affidavit of another man was to the effect that on Sunday night a week before the killing a light yellow negro, wearing a dirty white cap and gabardine coat, acted very suspiciously around his filling station, and he ran him away. Neither of these men identified the appellant or Wheatley as being the one they saw. The theory of the defense was that Wheatley was the man who committed the murder. Counsel states in brief the descriptions given by these affiants fit Wheatley, but do not describe the appellant. We do not find in the record evidence supporting the statement. This testimony, if competent, was of little probative value and could not have affected the result.

Substantially all of the newly discovered evidence was cumulative, and only tended to impeach and contradict witnesses introduced by the commonwealth. Such character of additional evidence, except under unusual

circumstances—not appearing in this case—does not authorize a retrial of a case. Roberson, secs. 1959, 1960.

Like the action of a court on the motion for continuance, a motion for a new trial on this ground is a matter resting in the sound discretion of the trial court, and should not be granted, "unless the new evidence is important and of such unerring character when the facts of the case are considered as is calculated to exert a decisive influence upon the result of a trial. And, if it is doubtful whether the newly discovered evidence will have any decisive influence upon the result of another trial, a new trial will not be granted." Roberson's Criminal Law, sec. 1956.

A very careful consideration of the entire record convinces us that the defendant has had a fair and impartial trial; and, although the severest penalty known to the law has been meted out to him, there is no escape through judicial channels. Death has been the punishment for centuries for the crime of murder. For the state to take the life of one who perpetrates a fiendish murder has from time immemorial been recognized as proper. It is the same penalty which has been exacted for ages, and is sanctioned in the old Biblical law of "an eye for an eye and a tooth for a tooth."

The judgment is affirmed.

Whole court sitting.