## Cochran v. Commonwealth.

(Decided November 21, 1930.)

CHAS. F. MONTGOMERY & E. C. MOORE for appellant.

J. W. CAMMACK, Attorney General, and HOWARD BLACK for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Under an indictment charging him with the murder of Bill Steinhaur, appellant, Everett Cochran, was convicted of manslaughter and his punishment fixed at confinement in the state penitentiary for a period of ten years. He appeals and asks for a reversal on the ground that the court erred in admitting incompetent evidence.

Appellant operated a store in which the homicide occurred about 3 p. m. on December 12, 1929. Oscar Lane and Al Hale, father-in-law of the deceased, were the only persons in the store, other than appellant and deceased. Hale purchased 5 cents' worth of cheese, and deceased asked appellant to cut him 2½ cents worth. Appellant smiled and said he would not cut less than a dime's worth. Deceased then made a remark which no one present understood except appellant. He claimed that deceased said: ''Set down you s—— of a b—— and let it go, that is all right.'' Appellant, who was behind the counter, came around the end of the counter and to a point in the aisle near the center of the store where deceased was standing, and he and deceased began striking each other and wrestling up and down the store aisle, but Hale and Lane testified they were of the opinion the two were playing and they made no attempt

to interfere. After the scuffle had continued for a short time, appellant drew a pistol and shot deceased in the abdomen. From the effects of the wound thus received he died five days later.

Mattie Steinhaur, sister of the deceased, testified that she was about fifty steps from the front of the store cutting wood; that the front door was open and she saw appellant strike her brother in the face with his fist; and that she started toward the store to interfere, but appellant fired the fatal shot before she arrived. When she arrived in the store, her brother was leaning against the wall and appellant was standing in front of him and still pointing the gun in his direction. When she reached her brother, he said: ''Oh, Lordy, I am going to die, I can't live long this way.'' She then took him to the home of his father-in-law about 150 feet away, where he said to her that ''he didn't know what made Mr. Cochran do him that way, they were just playing.''

Mrs. Nanny Hale testified as follows as to statements made by the deceased after he was brought to her home: ''I was washing his face and holding the wet rag to his head—we thought he was just about dead and I called to the girl for a pan of water. I asked him, 'Bill, how come this? Was you and Everett fighting?' and he said, 'Lord, no, Miss Hale, I wasn't mad, we had been joking and running on and all at once Everett jumped on me and then shot me.' ''

It is first contended that the statement of the deceased, ''Oh, Lordy, I am going to die, I can't live long this way,'' is insufficient to constitute a basis for the admission of the statements testified to by Mattie Steinhaur and Nanny Hale as dying declarations, and Starr v. Commonwealth, 97 Ky. 193, 30 S. W. 397, 398, 16 Ky. Law Rep. 843, is relied on, where the deceased said to his sister a short time before his death that ''he would not get well,'' that he ''could not stand it much longer,'' and it was held that this language did not indicate a sense of impending death. However, it appears in that case that deceased had lived for nearly seven months after being shot and had never been told he could not recover. The court said: ''The language seems to us rather that of discouragement than of a conviction of impending death.''

We think the facts here are more analogous to the facts in Smith v. Commonwealth, 229 Ky. 159, 16 S. W. (2d) 775, 776, where the sole basis for the admission of

the dying declaration was a statement of a witness, when asked what deceased said with reference to his condition, that "he said he was killed." In Williams v. Commonwealth 230 Ky. 328, 19 S. W. (2d) 964, the deceased said, "I am done for; I am gone," and it was held that this statement was sufficient to show that the statement he made as a dying declaration was made under the sense of impending death. In Burnett v. Commonwealth, 200 Ky. 765, 255 S. W. 544, 545, the deceased said, "Shorty, will you see I am taken care of? I am shot and killed," and it was held that a fair interpretation of this language was that he believed he was about to die. In Ulrich v. Commonwealth, 181 Ky. 519, 205 S. W. 586, 587, the deceased only made one direct reference to dying and that was when she said, "I feel that I must die." This statement was held sufficient to admit in evidence the dying declaration.

Consciousness on the part of the declarant that he was dying and was actually in extremis may be inferred not only from his statements, but also from the nature of the wound and other circumstances. Burnett v. Commonwealth, supra; Whitehead v. Commonwealth, 200 Ky. 440, 255 S. W. 93. In Wigmore on Evidence (2d Ed.) vol. 3., p. 172, the author says:

> "We may avail ourselves of any means of inferring the existence of such knowledge (that the declarant knew he was about to die); and if in a given case, the nature of the wound is such that the declarant must have realized his situation, our object is sufficiently attained. Such is the settled judicial attitude."

Steinhaur was shot in the abdomen and the bullet perforated his intestines in fourteen places. While he lived five days, the wound was of such a character that he must have recognized its seriousness. It is not necessary that deceased say in so many words that he is conscious of impending death; but it is sufficient if the judicial mind is convinced by legally sufficient evidence that deceased believed he was about to die. In view of the statement and the nature of the wound, we are of opinion, under the foregoing authorities, that a sufficient predicate was shown for admitting as dying declarations the statements of deceased made to Mattie Steinhaur and Nanny Hale.

It is next contended that the statements admitted as dying declarations were incompetent, but to this contention we are unable to agree, since the statement of deceased that, "I wasn't mad, we had been joking and running on and all at once Everett jumped on me and then shot me," is not a statement of his opinion, but is a statement of fact. Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. (2d) 29; Sparks v. Commonwealth, 225 Ky. 660, 9 S. W. (2d) 992; Hunter v. Commonwealth, 221 Ky. 170, 298 S. W. 379; Mays v. Commonwealth, 200 Ky. 678, 255 S. W. 257; Strong v. Commonwealth, 216 Ky. 98, 287 S. W. 235, 237; Pennington v. Commonwealth, 24 Ky. Law Rep. 321, 68 S. W. 451.

In the Sparks case the deceased stated, in substance, that he thought the defendant was as good a friend as he had in the county, and that he did not know why he shot him, and the statement was held admissible. In the Mays case deceased's statement, "I don't see why he shot me," was held not to be equivalent to the expression often condemned by this court, "he shot me for nothing," when it was followed by a statement of declarant covering the history of the whole transaction. In Strong v. Commonwealth, supra, it was held that a mere statement by deceased that he "was doing nothing" at the time he was shot would, standing alone, be inadmissible, but the objection was cured when the statement was followed by a statement of facts upon which he concluded that he was doing nothing at the time. In Commonwealth v. Mathews, 89 Ky. 287, 12 S. W. 333, 11 Ky. Law Rep. 505, a declaration by the deceased that he and the defendant were playing and the shooting was an accident was held admissible as a statement of fact.

If it be conceded in this case that parts of the statements are conclusions and not facts, the appellant is not in position to take advantage of such incompetent parts of the dying declarations, since the objections to the introduction of the statements were to them as a whole and there was no objection or exception to any particular parts of them. The rule is that for an objection to be available it must be specifically directed to that portion of the testimony which is incompetent, and an objection to the evidence as a whole when there is contained in it both competent and incompetent testimony should be overruled. Strong v. Commonwealth, supra; Meade v. Commonwealth, 225 Ky. 177, 7 S. W. (2d) 1052.

It is argued that the trial court erred in hearing evidence in the presence of the jury as to the competency of the dying declarations. The admissibility of dying declarations is a question for the determination of the court in the first instance, and testimony on this question should be heard out of the presence of the jury because it may develop that the declarations, or portions of them, are incompetent. However, this has never been held a ground for reversal where the jury is properly admonished or where, as in this case, the statements of the declarant are held to be competent. Whitehead v. Commonwealth, supra.

The witness Nanny Hale was permitted to testify that she had a conversation with appellant on the morning after the shooting occurred in which she repeated to him the statement made to her by the deceased, which was, "Lord, no, Miss Hale, I wasn't mad, we had been joking and running on and all at once Everett jumped on me and then shot me," whereupon appellant said, "Well, Nanny, we was, but he called me a bad name and then I flew off." This testimony was competent. It included alleged admissions by appellant that he and the deceased were engaged in play until the deceased called him a vile name. The witness testified to other statements made by her and appellant in the same conversation, some of which were irrelevant but none of which were prejudicial. Furthermore, appellant's objections were to the whole of the conversation detailed by the witnesses and were not directed specifically to the incompetent portions.

The witness, Johnny Murphy, who was introduced by the commonwealth, was permitted to state that he was in the appellant's store on the morning of the homicide and that appellant was under the influence of liquor. Other witnesses testified that appellant was drunk shortly after the homicide. The testimony of Murphy was probably incompetent as it was not shown that appellant's condition remained the same until the homicide, but under the circumstances it was not prejudicial to his substantial rights.

Judgment affirmed.