# Grubbs v. Commonwealth.

(Decided October 13, 1931.)

W. A. BRITTAIN for appellant.

J. W. CAMMACK, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Sol Grubbs appeals from a judgment convicting him of manslaughter, and fixing his punishment at ten years' imprisonment.

474

The facts are these: Grubbs and the deceased, Silas Mills, were neighbors, and lived on Middle Fork of Stinking creek, in Knox county. Shortly before the homicide, Grubbs had driven Mills' hogs out of his garden and the hogs were injured by a dog belonging to Grubbs. On the day of the homicide Grubbs and his brother-in-law, George Bargo, a boy fourteen years of age, were walking along the public road. The boy was carrying a shotgun. On reaching Rattle Snake Hollow they stopped in a vacant house by the side of the road. While there they heard the sound of hoof beats on the road, and as they came out of the house they saw Silas Mills and his brother, Chester Mills, riding by on two mules. Grubbs and Bargo joined them and walked down the road beside the mules. After Grubbs and Chester Mills had engaged in a friendly conversation, Silas Mills asked who it was that put the dog on his hogs. Grubbs admitted that he was the man. Thereupon they began to quarrel and Mills called Grubbs a vile name. On reaching a point in front of the home of Rufus Bargo, the father-in-law of Mills, Mills dismounted and started in the yard toward the house, which was about 42 feet away. Grubbs remained in the road, but the quarrel continued as the deceased approached the house. According to Chester Mills, when Silas attempted to enter the front door it was fastened, and he ran his hand through an empty window frame and unfastened it from the inside. Just as Silas unlatched the door and got it open, Grubbs grabbed the shotgun out of George Bargo's hands and shot him in the back. Silas began to pray and ran into the house, and then back onto the porch, where he fell and died.

According to Grubbs, Silas repeatedly threatened him and called him vile names as they went down the road. On reaching his father-in-law's house, Silas again called him a vile name and said, "I'll go in the house and get me a gun and kill you." Grubbs said: "Go on and leave me alone. I don't want any trouble with you." Silas went through the yard and onto the porch. The door was fastened and he started to turn the doorknob with his left hand. It was broken and the door was latched on the inside. Silas ran his arm through the window at the right of the door as he went in. He then unfastened the door from the inside, turned the knob with his left hand, and pushed the door open and walked in. As he started in the door he said, "I'll teach that

God damn son of a bitch to dog my hogs.'' When he got inside the door he leaned over like he was getting a gun out of the trunk or something, and then wheeled out the door. Grubbs then took the gun from George. Silas said, ''You God damn black nigger son of a bitch, I am going to kill you.'' As Silas wheeled with his left side toward him, Grubbs shot him. He then walked down the road, going first to his mother's home in Clay county, and from there to his grandfather's home in Leslie county, where he was arrested some three or four days later. George Bargo, from whom Grubbs grabbed the gun, testified that in some way Silas got the door open, turned around, and called Grubbs a ''God damn black nigger son of a bitch.'' Grubbs told him not to call him that any more; that he did not want any trouble with him. Grubbs then grabbed the gun and fired. As far as he heard, Mills never said anything about a gun. Other witnesses testified that Grubbs' reputation for peace and quiet was good.

The fear of future danger will not justify a homicide. To entitle one to an acquittal on the ground of self-defense it must appear that the accused believed, and had reasonable grounds to believe, that he was in immediate danger of death and great bodily harm at the hands of the deceased. According to the evidence for the commonwealth the deceased was in the act of entering the door, and Grubbs fired at a time when he was in no real or apparent danger at the hands of the deceased. On the other hand, it is doubtful if Grubbs' account of the affair makes out a case of self-defense. He does not say that the deceased drew a gun on him, or actually had a gun, but that the deceased said that he would get a gun and kill him, and then leaned over inside the door like he was getting a gun out of a trunk. But whatever may have been the proper inference from Grubbs' testimony, the jury had the right to conclude from the evidence as a whole that he was in no actual or apparent danger at the time he fired. It is true that the conduct and words of the deceased were such as to arouse great passion on the part of Grubbs, and doubtless this influenced the jury to find him guilty of manslaughter only.

Another ground urged for reversal is that the court allowed the jury to deliberate part of the time without having all the instructions before them. The length of time is not disclosed, and there is no showing that after

the instructions were produced the jury did not have full time for deliberation. It is not to be presumed that the jury overlooked the instructions after they were produced, and without more, we cannot say that appellant's rights were prejudiced.

Complaint is made of the fact that the court permitted the official court reporter to enter the jury room and read to the jury parts of the testimony of the defendant and not all of his testimony, as was agreed on by his attorney and the attorney for the commonwealth. We are not advised as to what parts of the testimony were not read. For aught that appears the parts not read may have been wholly immaterial. In the absence of a more specific showing we cannot indulge the presumption that appellant's rights were adversely affected by the alleged action of the reporter.

There is the further insistence that the court erred in insisting that the jury bring in a verdict after they had reported in open court on four occasions that they were unable to agree. What occurred when the jury reported on the occasions referred to is not disclosed. Certainly there is no showing of threats or coercion. All that the court may have done was to impress upon the jury the propriety and importance of coming to an agreement, and it is generally held that this may be done.

An additional error assigned is that the court should not have permitted Nabe Mills to testify that on the morning of the killing he saw George Bargo and his mother tracking the man who had killed Bargo's dog. There being no objection to this evidence, appellant cannot now complain of its admission. Cochran v. Commonwealth, 236 Ky. 284, 33 S. W. (2d) 30.

On cross-examination appellant testified that after the shooting he went to the home of his mother in Clay county, and from there to the home of his grandfather in Leslie county, where he remained for two days and was then arrested. He further testified that at the time he was arrested he was preparing to go to town and surrender, and in support of his contention that he had no thought of trying to escape he offered to prove by the jailer of Knox county, that, while he was incarcerated and awaiting trial, all the other prisoners in the jail escaped, and that he had ample opportunity to escape also, but declined to leave. The refusal of the court to

admit this evidence is assigned as error. What appellant's motive was in refusing to escape we cannot tell. It may have been that he preferred to take the chances of a trial, or that he was deterred from going by the fear of capture and the effect that it would have on the jury. But whatever may have been his motive, his conduct was wholly self-serving, and was not admissible either to prove his innocence or to overcome the effect of his flight immediately after the homicide.

Lastly, it is insisted that the court erred in not granting a new trial on the ground of newly discovered evidence. In support of this ground appellant filed his own affidavit to the effect that Finley Bargo and Dan Jackson, who assisted in washing and preparing the body of the deceased, would testify on another trial that deceased was not shot in the back. He did not support his affidavit by the affidavits of Bargo and Jackson, or by the testimony of any other person. That being true, the court did not err in refusing a new trial. Bowling v. Commonwealth, 148 Ky. 9, 145 S. W. 1126.

On the whole we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.