## Sanders v. Commonwealth.

(Decided Sept. 25, 1934.)

S. H. RICE for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, Ibbie Sanders, was indicted in the Owsley circuit court for the murder of her husband, Gilbert Sanders. She was tried at the June, 1934, term of the court, convicted for manslaughter, and sentenced to five years in the penitentiary; and frcm that judgment she prosecutes this appeal.

Appellant did not testify in her own behalf, nor offer any other evidence. The case was submitted to the jury on the evidence produced in behalf of the commonwealth.

It is urged for appellant that the cause should be reversed because the commonwealth failed to show (a) that the alleged crime was committed in Owsley county, and (b) that there was no evidence conducing to show that appellant committéd the crime and her motion for peremptory instruction should have been sustained.

None of the witnesses who testified saw the shooting or knew anything about it except as related by the deceased a few hours before he died, and the surrounding circumstances and facts observed by them after they arrived at the home of deceased a few hours after he had been shot, which was about noon August 11, 1933,

resulting in his death about 4 or 5 o'clock on the afternoon of the following day. According to the statements of the witnesses who observed the wounds inflicted on deceased, he had been shot twice, one bullet entering about the right hip bone and ranging downward, and the other bullet had entered the same side a few inches higher. A. M. Bell testified that he was with deceased the night before he died and that deceased made a statement to him with respect to how he came to be shot. On this point we note the following question and answer thereto:

"Q. Before he made that statement, state to the jury whether or not he said anything about whether he was going to live or die, or get well or not? A. Along in the night he began to get restless, and I thought he was going to die, you know, didn't know how soon, right away. I said to his son, 'Now your father is going to die, and I would like permission to ask him a few questions.' He said, 'Alright, go ahead.' I said, 'Gilbert do you realize you might be in some other world in the morning?' He said, 'Yes, I believe I am going to die.' I said, 'You go ahead in your own way and tell me how this happened, people are not satisfied.' He said, 'I went to work yesterday morning without my breakfast; I came in at noon, Ibbie had no dinner and,' he said, 'we got into a right smart quarrel.' He said, 'though she said if I would cut kindling she would get some dinner.' He said he went ahead and cut the kindling and said he went into what they call the upper room after a match, with his knife in his hand, and that he got the match and turned to go out of the room and about that time he turned he said he reckoned that Ibbie shot him twice.''

It is insisted for appellant that the above-quoted statement was incompetent and should not have been admitted to the jury as a dying declaration of the deceased. The complaints are that deceased did not state positively that he was going to die but only said that he believed he was going to die and that he did not state positively that the appellant shot him, but only said that he "reckoned" that she shot him. The bill of evidence does not disclose any objections to the statement complained of nor any motion to strike same. It

is a well-settled rule that a failure to object will be considered as a waiver and the questions cannot be raised for the first time on appeal. However, be this as it may, it is a well-settled rule of this jurisdiction that a declarant need not, in expressed words, declare that he knows he is about to die or will die, or make use of equivalent language. The general rule is that to render a statement admissible as a dying declaration it must first be shown by the party offering it in evidence that it was made in extremis, under a solemn sense of impending death, but whether this be so or not may be determined, not only by what he may say, but by his conduct, the character of the wounds, and all the surrounding circumstances. Ulrich v. Commonwealth, 181 Ky. 519, 205 S. W. 586, and cases cited therein; Stewart v. Commonwealth, 235 Ky. 670, 32 S. W. (2d) 29; Cochran v. Commonwealth, 236 Ky. 284, 33 S. W. (2d) 30.

It was testified by other witnesses that when they arrived at the home of deceased a few hours after he had been shot, the door to the room in which he was lying was closed and a child standing at the door and appellant was talking to deceased apparently in a whisper but they did not understand what she was saying to him. She was asked where the pistol was and she said it was in the other room. The witnesses went into the room and found the pistol and asked her where she got it and how long she had had it, and she said it had been "laying around" there about one year. A few days thereafter in another conversation she stated that the pistol had been there about twelve years. It is not shown by the record whether or not she was asked who shot deceased or any details concerning same. It was further testified by one witness that appellant was intoxicated when they arrived at the home of the deceased and there was no one there except appellant and a child. She offered no explanation to the officers or other persons as to how or why her husband came to be shot.

Respecting the complaint that the deceased did not state in exact language that appellant shot him but only said that he "reckoned" that she shot him, it is our conclusion that this was competent evidence for the jury's consideration in connection with the other facts and circumstances.

The evidence was mainly circumstantial, and in such cases it is proper to admit to the jury all facts and circumstances which may tend to be helpful to the jury in determining the guilt or innocence of the accused. According to the statement of the deceased, he and appellant had quarreled just immediately before he was shot, and the uncontradicted evidence was that appellant was intoxicated when the officers and neighbors came to the deceased's home. It would be unreasonable to presume that appellant had imbibed in intoxicating drinks. so soon after her husband had been so critically shot. In light of these facts and circumstances, the conclusion that she was intoxicated when her husband was shot is strongly persuasive. Thus we have that situation: Deceased and appellant had quarreled just prior to the shooting; appellant was intoxicated when the officers and neighbors arrived soon after the shooting; a pistol was found in the home and appellant admitted that it belonged to the home and was there at the time of the shooting; she gave no explanation to the officers or neighbors as to how or why her husband came to be shot. In Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108, 110, the rule respecting circumstantial evidence is thus stated:

"It has been often enunciated by this court that a conviction may be had on circumstantial evidence alone, although it is sometimes looked upon with suspicion, where all the links supplied in the chain of circumstances are sufficient to justify a conviction. * * * But circumstantial evidence to justify a conviction must point unerringly to the accused's guilt * * * and it must do more than create a suspicion of guilt. * * * To be sufficient to sustain a conviction it must exclude every reasonable hypothesis of innocence. * * * If the circumstances tending to show his guilt are as consistent with the defendant's innocence as with his guilt, they are insufficient. * * * To be sufficient such evidence must be consistent with every reasonable inference of his guilt and inconsistent with his innocence." In appellant's brief we find this statement:

"If the wounded man himself was in doubt as to his assailant, how can a jury be certain, how can the courts be certain?"

But it must be remembered that a jury is not required

to be *certain*. The law only contemplates that the jury shall believe beyond a reasonable doubt that an accused is guilty. Their determination will not be disturbed by the courts if there is any evidence, positive or circumstantial, of a probative or substantial nature.

In view of all the circumstances considered in connection with the proven and admitted facts, the conclusion is inescapable that every hpyothesis and inference point to appellant's guilt, rather than to her innocence. It is our conclusion, therefore, that the court did not err in submitting the case to the jury and that the evidence is sufficient to support the verdict.

Lastly, it is argued that the commonwealth failed to show that the crime was committed in Owsley county. Respecting that question we note the following questions and answers thereto of the testimony of Willie Judd, a justice of the peace of Owsley county:

"Q. Were you at his home after he was shot some time last summer? A. Yes, sir.

"Q. Was that in Owsley county where he was shot, where you saw him? A. Yes, sir.

"Q. Did he live in Owsley county? A. Yes, sir. * * *"

As a necessary prerequisite to finding the defendant guilty the jury was required by the instructions of the court to believe that the deceased was shot in Owsley county. It is our view that the above-quoted evidence is sufficient to show that the crime was commmitted in Owsley county.

Finding no error in the record prejudicial to the substantial rights of the appellant, the judgment is affirmed.