## Slone et al. v. Commonwealth.

March 11, 1941.

Edward L. Allen and W. W. Burchett for appellants.

Hubert Meredith, Attorney General, and William F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

Allen Slone is city marshal of the town of Lackey. Cluett Messer is an employee of the Central Elkhorn

Coal Company. He has been designated by the Governor as a peace officer for the protection of the coal company's properties. These properties are in the vicinity of Lackey. These officers frequently go about their duties together. They were together in Messer's car on Saturday night, January 13, 1940. About 8 o'clock of that evening they stopped in front of the Three Way Inn, a whisky and restaurant establishment, in Lackey. Slone went into the Inn and stayed there a while. The deceased, Mart Wicker, a man of bad reputation who was on parole from the penitentiary, was in the establishment. He was drinking. There is proof that Wicker left the place with Slone and Messer. These officers testified that they took Wicker to the home of his brother; Slone saying that he did not want to arrest Wicker because he thought that would cause his parole to be revoked. The officers went back and stopped their car in front of the Inn and Slone went in to see about another party and to get some sandwiches and coca cola. Between 8:30 and 9 o'clock Wicker went back to the Inn. Several witnesses testified that he asked where Slone was. He had a pistol in his pocket and he bought some whisky.

Jeff Burkett's car was parked in front of his home a short distance from Messer's car and on the same side of the road. There was a gasoline pump between these cars and about enough room for another car. Slone came out of the Inn with the food which he had purchased and got in the Messer car. At or about the time he was leaving the car Wicker came out of the Inn and went up to Messer. Davis Campbell drove his car up near the Messer car about this time and got out of it and went up to the side of the Messer car opposite Wicker. According to Messer's testimony, Wicker offered him a drink of whisky, which he refused, and Wicker then backed away from him and pulled something from his front pocket which looked like a pistol. Slone and Campbell testified that Wicker drew his pistol on Messer. Slone testified that Wicker drew the gun on him when they met behind Messer's car; that Wicker said he was going to shoot him; that he told him to drop his pistol and that he would have to arrest him; that he asked Messer to get out of his car to assist him in arresting Wicker; that Wicker backed up the road some 40 or 50 feet behind the Burkett car; and that he did not

pull his pistol until Wicker had fired two shots at Messer. Messer said that Slone asked him to help make the arrest. Campbell's testimony was to the same effect. Lee Wallen drove his car up in front of the gasoline pump about the time Messer was getting out of his car.

There is little dispute in the testimony up to this point. Speaking generally, the record shows that Wicker went into the restaurant after Slone had gone in; that he inquired for Slone; that he was drinking; that he had a pistol; that he purchased some whisky; that Slone came out of the restaurant and went to or got in the Messer car; that Wicker came out very shortly thereafter; that he went up to Messer; and that he and Slone met back of the Messer car. One or two witnesses for the Commonwealth testified, however, that they did not see Wicker draw a gun on Messer or Slone. There is little proof as to any remarks which may have been made by Slone or Wicker while they were behind the car. The testimony for the Commonwealth is that Wicker walked away from Slone toward the Burkett car. Slone testified, however, that he backed toward the car. There is also some testimony that Slone went back into the restaurant and came out again after he had encountered Wicker behind the Messer car. There is but little question, however, that Wicker either backed or walked to the rear of the Burkett car, for it was there that the body was found after the shooting. There was testimony for the defense, other than that of the appellants and Campbell, that Wicker was seen there. We have no doubt that the parties in and around the Inn knew trouble was brewing. Several of them testified that they went back into the restaurant about the time Messer and Slone started toward Wicker. One Commonwealth witness testified that Campbell came up on the porch of the Inn, but Campbell testified that he stayed by the side of the Messer car. We think the proof warrants the conclusion that two volleys of shots were fired, though some of the testimony referred only to several shots. Messer and Slone said that they did not pull their guns until Wicker started firing at Messer. Campbell testified that Wicker fired first at Messer. There were bullet holes through the windshield and windows of the Burkett car. Glass was found on the hood of the car and in the seats thereof. Wallen and others testified that they saw Slone and Messer going toward

the Burkett car. Wallen testified further that one of the appellants had his hand on his gun. The several wounds in Wicker's body indicated that the bullets entered from the front and side thereof. Messer testified that, after Wicker fell to the road, he went up to him and took his gun which had five empty shells in it. The gun was turned over to the sheriff the next day. Immediately after the shooting Messer and Slone left the scene, Slone testifying that they were afraid trouble might develop. The testimony of Campbell, the only eyewitness to the shooting other than the appellants, substantiates their theory of the case.

Slone and Messer were found guilty and each was sentenced to two years in the penitentiary; hence this appeal.

Are the facts and circumstances heretofore related such as to warrant the submission of the case to the jury? A review of commonwealth cases wherein questions have been raised as to the weight of the evidence reveals that we have repeatedly said that it is not within the province of the court to take a case from the jury if there is any evidence conducing to show the defendant guilty of the offense charged, or any of its degrees. Stanley's Instructions to Juries, Section 759. But those cases will show further that "any evidence" does not mean evidence which merely raises a question or suspicion of guilt. The evidence of guilt must be of probative value and of a substantial nature. Sloan v. Commonwealth, 258 Ky. 461, 80 S. W. (2d) 553; Sanders v. Commonwealth, 255 Ky. 456, 74 S. W. (2d) 922; Anderson v. Commonwealth, 196 Ky. 30, 244 S. W. 315. We find no evidence of probative value and of a substantial nature which supports a theory of the killing contrary to that of the appellants. Slone was a peace officer, and under the circumstances presented in this record was justified in attempting to arrest Wicker. There is no evidence contradicting the testimony that Messer was called into service by Slone. The fact that he was a mine guard has nothing to do with this case, as presented by the record before us. There is no showing of ill will on the part of Slone and Messer toward Wicker. On the contrary, according to their evidence, they had attempted earlier to befriend him. Under the circumstances, we think the trial court should have given a peremptory instruction in favor of the appellants.

672

We deem it unnecessary to discuss other questions raised.

Wherefore, the judgment is reversed with directions to set it aside and for proceedings consistent with this opinion.