# Turner v. Commonwealth.

June 20, 1941.

C. A. Noble and O. J. Cockrell for appellant.

Hubert Meredith, Attorney General, Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant, charged with the murder of James Otis Carter, was found guilty of manslaughter, the jury inflicting a penalty of five years' confinement in the Reformatory. His motion for a new trial was supported by eight or more grounds. On appeal all save the two noted are waived, since in brief it is only contended by counsel that the court erred in not sustaining motion for a directed verdict, and the verdict is not supported by sufficient evidence. Appellant alone testified, in defense, and we give his version of the occurrence.

He and Carter were brothers-in-law, though acquainted for only a few months. Carter lived in another county, and had visited his brother-in-law, who resided in Breathitt, two or three times. The homicide occurred on April 3, 1939. On the previous Saturday Carter and his wife came for a visit to Turner. On the following Monday both came to Jackson, the county seat, in Carter's automobile. They first got shaved, then moved on to a roadhouse having the delectable name "Bucket of Blood," located about one-half mile from the town. They drank several bottles of ale, and after a short time Carter

loaned Turner his car, and he and Doyle South drove into town. They returned in a short while, whereupon Turner and Carter drove to town. On this trip, or upon their return to the roadhouse, Carter turned over to Turner his money, about $70, apparently because of his fear that it might be taken from him.

After milling around a while, Carter, Turner and South went into a room off from the restaurant where there were several other persons, among them Rader Combs, who had a pistol. Carter and Combs were strangers, but after displaying their respective pistols, Carter said to Combs, ''Let's me and you walk outside and shoot it out,'' though there had been no display of ill feeling between the two. Turner, suggesting that the two did not know each other, said, ''It would be wrong to do that.'' Some one took Combs' pistol and Turner took the one from Carter, saying (on trial), ''I took it to keep him out of trouble with this strange man he was talking to.''

Some of the party went out on the porch, and Carter asked South if he would go to town with him to get some cartridges for his pistol, and South agreed. Carter then asked Turner if he had his, Carter's pistol, and he answered ''Yes.'' Carter and South then left the porch and walked to Carter's automobile. They had some trouble in starting it, and Turner came up and was getting in the car. Carter said he was going to town to buy a pistol, and told Turner that he could not ride in his car. Turner again told Carter that he had the pistol, and there was no need to go to town to buy another.

According to Turner, Carter said, ''I will take the pistol and kill you, you God damn son-of-a-bitch, and he shoved me and I jumped back three or four steps and told him I didn't want to hurt him. He kept right on, and I fired three shots and jumped back every time I fired. I fired to save my own life; I believed what he said.''

South, who was present, in testifying for the commonwealth, fails to corroborate Turner as to the language used above, or the threat attributed to Carter by Turner. He said:

''Henry come out, and says 'don't go to town; no use to. I've got your pistol here and will give it to you

when you need it,' and Otis jumped out of the car and shoved him back and said 'I want my pistol;' Henry was backing and he (Henry) pulled the pistol and went to shooting. They were within four or five steps of each other when Henry shot, and Carter had nothing in his hand.''

A search of the body showed that Carter had no weapon of any sort.

Ben Mann says he saw ''two men into a difficulty and one was backing; the other going towards him. They kept that up for a few seconds, and they were cursing and seemed to be mad, and the man would not stop, and the pistol fired three times was all I could tell. One man was grabbing at the other and he was telling him to stand back.'' He recognized Turner as the one who fired the pistol. The coroner testified as to the wounds, and from his description it is difficult to understand how the bullets made the wounds indicated, if Turner and Carter were facing each other during the firing.

It was shown that Turner had only one arm, and was smaller than Carter; the former weighed about 160 and the latter about 170 pounds. Turner said that there had been no unfriendly feeling ''as long as they had been acquainted.'' Turner says that Carter had been drinking a good deal of ale, ''but he was no drunk man.'' Turner admits that he did not see any weapon in Carter's hand at the time he shot him, and on cross-examination does not say that Carter was trying to hit him; ''I was scared; he was trying to get hold of me.'' It is rather peculiar that no witness, who was near enough to hear, corroborated appellant as to Carter's cursing or threatening Turner.

Counsel contends the rule is, that where the evidence for the Commonwealth can as well be reconciled with the innocence of the accused as consistently as with guilt, the defendant is entitled to a favorable verdict, fortifying this pronouncement with respectable authorities, among them, York v. Com., 235 Ky. 751, 32 S. W. (2d) 331; Schuster v. Com., 240 Ky. 785, 43 S. W. (2d) 41, and Slone v. Com., 285 Ky., 668, 149 S. W. (2d) 1.

The rule quoted supra, is sound. However, there are other rules. One is that where there is any evidence of probative value, of a substantial nature, the court should

not take the case from the jury. Sanders v. Com., 255 Ky., 456, 74 S. W. (2d) 922. Here appellant admitted his firing the shot which caused Carter's death, and stood on his plea of self-defense. We have for a long time maintained the rule that where this is true, it becomes incumbent on the accused to convince the jury that the consummated act was in real self-defense. Reed v. Com., 273 Ky. 607, 117 S. W. (2d) 589, 116 A. L. R. 673; Bolen v. Com., 265 Ky. 456, 97 S. W. (2d) 1. This issue was put before the jury by an instruction, which we have examined and found correct in form and substance.

We have also held that under proper instructions the jury may consider the question, not only as to necessity to act, but whether the accused exercised more force than was necessary to defend himself from the attack, or impending danger. Hopkins v. Com., 234 Ky., 676, 28 S. W. (2d) 971. And as we view the evidence it is not at all difficult to see how the jury might have well reached the conclusion that appellant did not exercise good judgment in resisting the attack, which may after all have been merely a movement on the part of Carter to retrieve his pistol. Nor is it beyond the realm of reason to observe that Turner may have become suddenly angered by Carter's refusal to allow him to accompany the latter and South on the proposed trip to town. It is in proof that although Turner was backing when the shots were fired, the two were four or five feet apart, and Turner admits that Carter was not armed.

We have suggested above that the described wounds would not indicate the position of Carter at the time, as claimed by appellant. If Carter was approaching Turner, it is difficult to see how one bullet could have gone through the right arm from the inside. Another shot went through the shoulder into the left side. Appellant could not explain how this came about.

However, we need not speculate as to the impressions or beliefs of the jury, gained from the testimony, but we conclude from the proof that the court properly overruled appellant's motion for a directed verdict, and that there was sufficient proof to justify the jury's finding that the taking of Carter's life was not in self-defense.

Judgment affirmed.