## Slone v. Commonwealth.

Feb. 27, 1942.

Clarke & Francis for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Fulton—Reversing.

This appeal is from a judgment sentencing the appellant, Allen Slone, to the penitentiary for life for the murder of Jack Triplett. Grounds urged for reversal of the judgment are 1) that the verdict was flagrantly against the evidence 2) improper argument by attorney for the Commonwealth and 3) error in failing to define the term "sudden affray" contained in the voluntary manslaughter instruction.

As a part of the background for proper understanding of the case, it is pertinent to state that the appellant in the year 1940 was sentenced to the penitentiary for two years by the Floyd Circuit Court for the voluntary manslaughter of Mark Wicker (a relative of the deceased, Jack Triplett), but this judgment was reversed by this court in Slone v. Commonwealth, 285 Ky. 668, 149 S. W. (2d) 1. We held in that case that the evidence showed conclusively that appellant acted in self-defense and that the trial court should have directed a verdict in his behalf. This former killing was not proven in evidence but appeared only incidentally, as will hereafter be shown.

At the time in controversy appellant was policeman of the town of Lackey but for sometime had been working in the mines at Wayland and the deceased, Jack Triplett, had been employed as deputy policeman. On the day of the killing appellant stopped at a restaurant in Lackey and while he was there the deceased came in. Without any provocation from appellant, the deceased said to appellant, "Allen, I heard you intended to kill me. You killed one man and got by with it. It takes a low down, cowardly son of a bitch to shoot a man in the back." The deceased made further remarks to the effect that appellant had bush-whacked one man and got by with it. According to a witness for the Commonwealth, appellant, in reply to this said, "I did." Appellant testified that at that time the deceased drew his pistol and poked it into appellant's stomach but that he finally persuaded him not to fire and left the restaurant. Appellant went home and after eating supper returned in about twenty minutes to the restaurant. The deceased, in the meantime, walked over and sat down on a porch in sight of the restaurant. Parked in front of the restaurant was a car which made regular trips to Wayland. Evidence for the

Commonwealth is to the effect that appellant walked up to this car and spoke to the driver about taking a trip to Wayland. Appellant's young son was with him. While appellant was standing by or near the car the deceased left the porch on which he was sitting and started either towards the restaurant or towards the car—the evidence is conflicting on this point. However, one witness for the Commonwealth testified that when the deceased arrived at a point near the parked car he called to this witness and said to him, "Allen has got a pistol and I am going to take off of him. You stand here and watch me." Some witnesses for the Commonwealth, however, testified that appellant had his pistol drawn before the deceased got near the car and that he fired before the deceased had said anything or made any demonstration. Appellant testified that the deceased, after leaving the porch where he was sitting and coming towards the parked car and after stating that he was going to take appellant's gun away from him, started towards him, whereupon appellant said, "Jack, I don't want any trouble" and when he said that the deceased drew his gun and fired and thereupon appellant fired. Appellant is supported in this testimony by several witnesses and contradicted by others. Evidence was also introduced as to threats made by both appellant and deceased against each other.

While the evidence as a whole leaves us with the decided impression that the deceased had determined to provoke appellant into some sort of demonstration in order to give the deceased apparent justification for shooting him, we are unwilling to hold that the verdict is flagrantly against the evidence in view of the fact that a number of witnesses testified that appellant had his pistol drawn even before the deceased left the porch on which he was sitting. While we have considerable doubt as to the truth of this testimony, nevertheless the credibility of the witnesses was a matter for the jury and we are unwilling to say that the jury's finding, which necessarily involved a finding that these witnesses told the truth, is flagrantly against the evidence. Assuming it to be a fact that appellant had his pistol drawn at the time the witnesses say, it is most likely that he had formed a predetermination to kill the deceased. This being true, the evidence was sufficient to sustain the verdict of the jury that appellant was guilty of murder.

In the closing argument counsel for the Commonwealth said to the jury that appellant had stated, "I have bush-whacked one man." This statement was excepted to and thereupon counsel for the Commonwealth, referring to appellant, said "He said he was asked by Jack Triplett if he hadn't bush-whacked one man and got by with it, and he said 'I did.' " This statement was also objected to by counsel for appellant, but the objection was overruled and exception was taken. It is stated in brief for appellant that counsel for the Commonwealth at numerous times in his argument referred to the testimony to the effect that appellant had killed, or bush-whacked, a man. However, the only instance shown in the bill of exceptions is that we have referred to and is the only one which can be considered. It is our conclusion, however, that such argument was so highly prejudicial to appellant as to require a reversal of the judgment.

The mere fact that a witness for the Commonwealth detailed the conversation between the deceased and the appellant occurring in the restaurant, in which conversation the deceased referred to the former killing by appellant, did not constitute the former killing substantive evidence of appellant's guilt and counsel for the Commonwealth had no right, in argument to the jury, to comment thereon as an indication of appellant's guilt. Evidence of other crimes or acts committed by an accused is not competent except in a few particular instances, such as to illustrate motive or to show knowledge, intent, plan or design, and the mere remarks of the deceased addressed to appellant did not put the former killing in evidence as substantive evidence of appellant's guilt. Further, counsel for the Commonwealth erroneously told the jury, in effect, that appellant in the conversation with the deceased admitted that he had bush-whacked a man and got by with it. Appellant made no such admission. It is true that a witness for the Commonwealth stated that appellant in response to a remark by the deceased that appellant had bush-whacked a man said "I did" but nowhere in appellant's testimony did he admit making any such remark. We have no doubt that this argument was highly prejudicial to appellant and requires a reversal of the judgment. We are inclined to believe that this line of argument played a potent part in inducing the jury to impose such heavy punishment on the appellant on evidence which, to say the least, appears

rather dubious. While we are unwilling to say that the verdict was so flagrantly against the evidence as to require a reversal for that reason, this highly prejudicial and improper argument in a case as doubtful as this necessarily requires a reversal.

There is no merit in appellant's contention that error was committed in failing to define the term "sudden affray." Failure to define this term has repeatedly been held not to be prejudicial error. See Edwards v. Commonwealth, 289 Ky. 318, 158 S. W. (2d) 377 and cases therein cited.

On account of the prejudicial and improper argument the judgment is reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.