## Amburgey v. Commonwealth.

October 18, 1946.

Clark Pratt and John C. Cornett for appellant.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

An indictment was returned at the July 1941 term of the Knott Circuit Court charging Sid Amburgey and O. C. Vance with the murder of Bobby Bentley. Shortly thereafter Amburgey was inducted into the army and was not discharged until the fall of 1945, which accounts for his not being tried until the March term of 1946.

Amburgey was granted a severance and his trial resulted in a conviction for manslaughter with his punishment being fixed at confinement for two years in the penitentiary. The sole ground argued in his brief for reversal of the judgment is that the verdict is not supported by the evidence and the trial court should have sustained his motion for a directed verdict. This necessitates a resume of the principal evidence heard on the trial.

The three boys were friends and met at the country store of Willis Mullins on the afternoon of April 26, 1941. Each appears to have had several drinks and the three went to a nearby house where they pooled their resources and purchased a half gallon of whiskey. They returned to the store where they drank and gave away part of the liquor and divided the balance among themselves. Each filled a half pint bottle for himself and what remained was put in a "Double Cola or Pepsi-Cola" bottle, which appears to have been the common property of the three.

These boys got under the influence of liquor and had supper at the store which was paid for by Amburgey. The store is located on the edge of the road and, as we read the record, Branham's Creek is on the opposite side of the road from the store and runs parallel with the road. The store fronts on the road for a distance of sixteen feet and there is a platform, or porch, extending across its entire front, with a door leading into the store about the middle of the platform. Some ten or twelve feet below the store, and on the same side of the road with it, is a ditch or drain which runs into the road.

After dark and about 8 o'clock Amburgey and Evans were standing on the ground at the upper corner of the store talking about going home and, according to the undisputed testimony, Bentley joined them and said something about going home with them. They both testified Bentley offered Evans a drink out of the Cola bottle;

he refused, but Amburgey spoke up saying that he would take a drink. To which Bentley replied, "You won't get a damn drop of it." When Amburgey asked him, "Why"; he said, "I've killed one God damn son-of-bitch and I don't care to kill another." With that, he grabbed Amburgey and started striking him with the bottle.

From this point the evidence is conflicting. Amburgey testified that he was trying to get hold of the bottle to prevent being hit any more and started backing off. As he backed, Bentley kept coming on him with the bottle and he stepped in the drain and fell and Bentley "kindly fell on top of me." He further testified, "I hadn't gone back on the ground, but I was sitting down going backwards." Amburgey said he was facing up the creek and Bentley was facing down the creek and that Bentley was down on his knees over him striking at him with the bottle when Amburgey fired two shots from his pistol. Amburgey could not state whether he got out his pistol before he fell or after he got on the ground.

It is undisputed that only one shot took effect, which entered Bentley's breast through "the second button hole of his shirt," ranged downward and came out about his waist line. Both Amburgey and Vance testified that the latter took no part in the affray but remained in front of the upper end of the store porch. Vance's testimony on the whole corroborated Amburgey.

Fairo Mullins was in front of the store near the edge of the road when the fight started and testified that there were only two combatants. His testimony corroborated that of Amburgey. Fairo and his brother, Willis Mullins, both testified that they found on the night of the killing a bottle "pretty close" to the place where deceased's body lay and it was similar to the one which had contained the jointly owned liquor.

Robert Adams, a nephew of deceased, was standing in the front door of the store and was just about as close to the fight as were Vance and Fairo Mullins, and had an equal opportunity with them to have seen what transpired. He contradicted Vance, Fairo Mullins and appellant as to what happened. Robert testified that there were three men engaged in the affray, one was being attacked by the other two who were coming on him and striking at him as he backed off; that the man who was

backing fell in the ditch or drain and as he tried to get up one of the other men stooped over him and shot him. While Robert's testimony is not clear as to whether deceased was facing up or down the creek when he was shot, he testified that he was the first man to him and when he reached deceased he was facing up the creek.

It is seen that there is a direct conflict in the evidence as to whether the accused or deceased was the man who was retreating, and as to whether accused was on the ground and shot deceased while the latter was on his knees bending over him, or whether the deceased was on the ground and the accused stooped over him and fired the shot into his chest. All three of the eyewitnesses, Vance, Mullins and Adams, were about the same distance from the shooting and all testified that it was so dark that they could not recognize the faces of the men just as the shots were fired, but identified them "as the one who was backing," "the one who was coming on," "the one who fell" and "the one who shot." The entry of the bullet into deceased's chest, its downward range and exit just above the waist line, will support either the testimony given in behalf of the accused or that of the Commonwealth.

The jury is the judge of the weight of the evidence and of the credibility of the witnesses and although its verdict may be against the preponderance of the evidence, we will not reverse the judgment if there is any evidence of probative value to support it, unless the verdict is so unreasonable as to require us to reject it as a matter of law. Sizemore v. Com., 279 Ky. 190, 130 S. W. 2d 31; Taylor v. Com., 301 Ky. 109, 190 S. W. 2d 1003. We have written many times that when the accused admits the killing it becomes incumbent upon him to convince the jury that he acted in self-defense. Turner v. Com., 287 Ky. 499, 153 S. W. 2d 927, and authorities therein cited. Here, the evidence was sufficient to take the case to the jury and to sustain the verdict.

The judgment is affirmed.